## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA

HUGH BRIAN STREET

VERSUS

CHUCK CHRIST, ET AL.

CIVIL ACTION NO. 2:25-CV-01882

JUDGE JAMES D. CAIN, JR.

MAGISTRATE JUDGE LEBLANC

**************************************************************************

### MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6) FOR FAILURE TO STATE A CLAIM OR, ALTERNATIVELY, MOTION FOR A MORE DEFINITE STATEMENT PURSUANT TO FED. R. CIV. P. 12(e)

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ..................................................................................... ii

FACTS .......................................................................................................................... 1

A.  Standards Under Federal Rule of Civil Procedure 12(b)(6) ...................................... 2

B.  Any alleged events which occurred prior to November 25, 2024 are prescribed .................... 4

C.  Plaintiff's claims of excessive force and First Amendment retaliation are meritless .............. 5

D.  Plaintiff was not seized by Deputy Christ ................................................................ 5

E.  Plaintiff was not subjected to excessive force ........................................................... 6

F.  Plaintiff does not have a due process claim under the Fourteenth Amendment ...................... 7

G. Plaintiff does not have a claim for civil conspiracy .................................................... 8

H. Plaintiff does not have a valid equal protection "class of one" claim ................................. 9

I. Plaintiff does not have a valid *Monell* claim ........................................................... 10

J. Defendants are entitled to qualified immunity .......................................................... 14

K. All of Plaintiff's Louisiana state law claims must be dismissed ...................................... 17

L. Plaintiff's request for injunctive relief should be denied ............................................. 20

M. Plaintiff's request for declaratory relief should be denied ........................................... 22

N. Alternatively, Plaintiff should be required to provide a more definite statement .................... 23

CONCLUSION ......................................................................................................... 24

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Anderson v. Creighton,*
   483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) ............................................................ 16

*Arkansas Project v. Shaw,*
   775 F.3d 641 (5th Cir. 2014) ....................................................................................................... 20

*Arsenaux v. Roberts,*
   726 F.2d 1022 (5th Cir.1982) ....................................................................................................... 8

*Ashcroft v. al-Kidd,*
   563 U.S. 731, 131 S.Ct.  2074, 179 L.Ed.2d 1149 (2011) ........................................................ 15

*Ashcroft v. Iqbal,*
   556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d. 868 (2009) .................................................... 3, 10

*Baker v. Putnal,*
   75 F.3d 190 (5th Cir. 1996) .......................................................................................................... 3

*Bazan v. Hidalgo County,*
   246 F.3d 481 (5th Cir. 2001) ...................................................................................................... 15

*Bell Atlantic Corp. v. Twombly,*
   550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ................................................ 2, 3, 19

*Bennett v. City of Slidell,*
   728 F.2d 762 (5th Cir. 1984), *cert. denied*, 472 U.S. 1016 (1985) .......................................... 10

*Boyd v. Calcasieu Parish Sheriff's Office,*
   Civil Action No. 2013 WL 1857448 (W.D.La. May 2, 2013) .................................................... 9

*Brown v. Pouncy,*
   93 F.4th 331 (5th Cir. 2024) ........................................................................................................ 4

*California v. Hodari D.,*
   499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991) ............................................................ 6

*Campbell v. City of San Antonio,*
   43 F.3d 973 (5th Cir.1995) ........................................................................................................ 14

*Eason v. Holt,*
   73 F.3d 600 (5th Cir. 1996) .......................................................................................................... 2

*Club Retro, LLC v. Hilton,*
    568 F.3d 181 (5th Cir. 2009) ........................................................................... 15, 16

*Collier v. Montgomery,*
    569 F.3d. 214 (5th Cir. 2009) .............................................................................. 15

*Coon v. Ledbetter,*
    780 F.2d 1158 (5th Cir. 1986) ................................................................. 11, 12, 13

*Davidson v. City of Stafford, Tex.,*
    848 F.3d 384 (5th Cir. 2017) ................................................................... 11, 12, 13

*Delcambre v. Mancuso,*
    2018-833, (La.App. 3 Cir. 4/10/19); 268 So.3d 325 ........................................... 18

*Dismukes v. Hackathorn,*
    802 F.Supp. 1442 (S.D.Ms. 1992) ......................................................................... 7

*Duburque Barge & Fleeting Serv., Inc. v. Plaquemines Par. Gov't,*
    No. 10-0516, 2010 WL 1710372 (E.D.La. Apr. 23, 2010) .................................... 23

*eBay, Inc. v. MercExchange, L.L.C.,*
    547 U.S. 388, 126 S.Ct. 1837, 164 L.Ed.2d 641 (2006) ....................................... 22

*Edwards v. City of Fort Worth,*
    Civil Action No. 4:22-cv-00429-O-BP, 2022 WL 17812930, (N.D.Tx. Nov. 28, 2022) ......... 14

*Etienne v. EBR-COA,*
    No. 17-445-SDD-RLB, 2018 WL 2124890 (M.D. La. Apr. 17, 2018).................... 14

*Floyd v. City of Kenner, La.,*
    351 Fed.App'x 890 (5th Cir. 2009) ..................................................................... 16

*Gates v. Texas Dep't of Protective & Regulatory Servs.,*
    537 F.3d 404 (5th Cir.2008) ................................................................................ 14

*Gibson v. Jean-Baptiste,*
    802 Fed.App'x 858 (5th Cir. 2020)......................................................................... 5

*Glenn v. City of Tyler,*
    242 F.3d. 307 (5th Cir. 2001) ............................................................................. 15

*Goldstein v. Serio,*
    496 So.2d 412 (La.App. 4 Cir. 1986) ................................................................. 19

*Gooley v. Mobile Oil Corp.,*
    851 F.2d 513 (5th Cir. 1988) ................................................................................. 3

*Graham v. Connor*,
   490 U.S. 386, 109. S.Ct. 1865, 104 L.Ed.2d 443 (1989) ........................................ 6

*Grandstaff v. City of Borger*,
   767 F.2d 161 (5th Cir. 1985) ................................................................... 11, 12, 13

*Hafer v. Melo*,
   502 U.S. 21,112 S.Ct. 358, 116 L.Ed.2d 301 (1991) ............................................ 15

*Hale v. Townley*,
   45 F.3d 914 (5th Cir. 1995) ...................................................................................... 8

*Hansard v. Zamora*,
   Civil Action No. 23-CV-00041-DC-DF, 2024 WL 3682240 (W.D.Tx. Aug. 5, 2024)............. 5

*Hebert v. Louisiana Licensed Prof'L Vocational Rehabilitation Counselors*,
   2007-610,  (La.App. 3 Cir. 3/4/09), 4 So.3d 1002, *writ denied*, 2009-0750 (La. 5/22/09), 9
   So.3d 144, *and writ denied*, 2009-0753 (La. 5/22/09), 9 So.3d 144 ........................................ 19

*Hey v. Irving*,
   161 F.3d 7 (5th Cir. 1998) ........................................................................................ 8

*Hicks v. Bexar Cnty., Tex.*,
   973 F.Supp. 653 (W.D. Tex. 1997) ......................................................................... 8

*Hilliard v. Ferguson*,
   30 F.3d 649 (5th Cir.1994 ........................................................................................ 9

*Hoffman v. Stulga*,
   464 Fed.App'x 229 (5th Cir. 2011) .......................................................................... 5

*Hughes v. Tobacco Inst., Inc.*,
   278 F.3d 417 (5th Cir. 2001) ................................................................................... 3

*In re Katrina Canal Breaches Litig.*,
   495 F.3d 191 (5th Cir. 2007) ................................................................................... 3

*In re Stewart*,
   647 F.3d 553 (5th Cir. 2011) ................................................................................. 20

*In re Taxotere (Docetaxel) Prod. Liab. Litig.*,
   995 F.3d 384 (5th Cir. 2021) ................................................................................... 4

*Italian Star Line v. U.S. Shipping Bd. Emergency Fleet Corp.*,
   53 F.2d 359 (2d Cir. 1931) ..................................................................................... 19

*Jones v. Greninger*,
   188 F.3d 322, 324 (5th Cir. 1999) ........................................................................... 3

*Laird v. Travelers Ins. Co.,*
   267 So.2d 714 (La. 1972) ................................................................. 17

*Lindquist v. City of Pasadena,*
   669 F.3d 225, (5th Cir. 2012) ......................................................... 9

*Lozano v. Smith*,
   718 F.2d 756 (5th Cir. 1983) .......................................................... 16

*Lynch v. Cannatella*,
   810 F.2d 1363 (5th Cir. 1987) ........................................................ 8

*Malley v. Briggs,*
   475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986) .......................... 15

*Martinez v. Nueces Cnty., Texas*,
   71 F.4th 385 (5th Cir. 2023) ......................................................... 10

*McFadden v. Lucas,*
   713 F.2d 143 (5th Cir. 1983) .......................................................... 5

*McGregor v. LSU Bd. of Supervisors*,
   3 F.3d 850 (5th Cir. 1993) ............................................................. 4

*McHenry v. Renne,*
   84 F.3d 1172 (9th Cir. 1996) ......................................................... 23

*Mendenhall v. Riser,*
   213 F.3d 226 (5th Cir. 2000) .......................................................... 15

*Milam v. City of San Antonio*,
   113 Fed.App'x 622 (5th Cir. 2004) .................................................. 13

*Mini–Togs, Inc. v. Young*,
   354 So.2d 1389 (La. App. 2 Cir.1978) ........................................ 18, 19

*Monell v. Dep't of Soc. Servs. of City of New York*,
   436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) .......................... 10

*Murphy v. Kellar,*
   950 F.2d 290 (5th Cir. 1992) .......................................................... 16

*No Drama, LLC v. Caluda,*
   15-211 (La. App. 5 Cir. 10/14/15), 177 So.3d 747 ............................... 18

*Oliver v. Scott*,
   276 F.3d 736 (5th Cir. 2002) .......................................................... 15

*Palowsky v. Campbell*,
   22-592 (La. App. 5 Cir. 12/14/23), 378 So.3d 226 ................................................. 18

*Payne v. Travenol Lab., Inc.*,
   565 F.2d 895 (5th Cir. 1978) ................................................................................. 21

*Pearson v. Callahan*,
   555 U.S. 223, 129 S.Ct. 808, 818, 172 L.Ed.2d. 565 (2009) ................................ 15

*Peterson v. City of Fort Worth, Tex.*,
   588 F.3d 838 (5th Cir. 2009) ................................................................... 10, 12, 13

*Rizzo v. Goode*,
   423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976) ............................................. 16

*Rochin v. California*,
   342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952) ................................................... 7

*Rountree v. Dyson*,
   892 F.3d 681 (5th Cir. 2018) ............................................................................. 9, 10

*Santos v. Welty*,
   No. 5:20-cv-205-BQ, 2021 WL 1799828 (N.D. Tex. Mar. 25, 2021) ...................... 14

*Schmidt v. Lessard*,
   414 U.S. 473, 94 S.Ct. 713, 38 L.Ed.2d 661 (1974) ............................................. 21

*Shaw v. Villanueva*,
   918 F.3d 414 (5th Cir. 2019) ................................................................................... 8

*Shillingford v. Holmes*,
   634 F.2d 263 (5th Cir. 1981) ................................................................................... 7

*Snyder v. Trepagnier*,
   142 F.3d 791 (5th Cir. 1998) ................................................................................. 12

*Sterling v. City of Jackson, Mississippi*,
   159 F.4th 361 (5th Cir. 2025) ................................................................................. 7

*Sweetin v. City of Texas City, Texas*,
   48 F.4th 387 (5th Cir. 2022) ................................................................................. 10

*Swierkiewicz v. Sorema N.A.*,
   534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) ............................................. 23

*Tarver v. City of Edna*,
   410 F.3d 745 (5th Cir. 2005) ................................................................................... 6

*Thompson v. City of Galveston,*
  79 F.Supp. 504 (S.D.Tx 1997), *aff'd on other grounds*, 158 F.3d 593 (5th Cir. 1998) ............. 9

*Thompson v. Steele,*
  709 F.2d 381 (5th Cir. 1983) ........................................................................... 16

*Thompson v. Upshur County, TX,*
  245 F.3d 447 (5th Cir. 2001) ........................................................................... 16

*U.S. ex. rel. Willard v. Humana Health Plan of Texas, Inc.,*
  33 F.3d 375 (5th Cir. 2003) ............................................................................. 2

*U.S. v. Williams,*
  365 F.3d 399 (5th Cir. 2004) ........................................................................... 19

*United States v. Hinds County Bd. of Supervisors,*
  128 F.4th 616 (5th Cir. 2025) .......................................................................... 21

*United States v. Morris,*
  40 F.4th 323 (5th Cir. 2022) ............................................................................. 6

*Valle v. City of Houston,*
  613 F.3d 536 (5th Cir. 2010) ........................................................................... 11

*Vazquez Barrera v. Wolf,*
  455 F.Supp.3d 330 (5th Cir. 2020) .................................................................... 20

*Village of Willowbrook v. Olech,*
  528 U.S. 562, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000) ......................................... 9

*White v. Monsanto Co.,*
  585 So.2d 1205 (La. 1991) .............................................................................. 18

*World Wide St. Preachers Fellowship v. Town of Columbia,*
  591 F.3d 747 (5th Cir. 2009) ........................................................................... 11

Statutes

42 U.S.C. § 1983 ........................................................................................ *passim*

LSA-C.C. art. 2315 ....................................................................................... 18

LSA-C.C. art. 3492 ........................................................................................ 4

Rules

Fed. R. Civ. P. 8 ......................................................................................... 19

Fed. R. Civ. P. 12(b)(6) ................................................................................ 2, 3

Fed. R. Civ. P. Rule 12(e)...........................................................................................23, 24

Fed. R. Civ. P. Rule 65(d)..................................................................................................21

**MAY IT PLEASE THE COURT:**

Now come Sheriff John Craft, Chief Calvin Turner, and Deputy Chuck Christ, who are sought to be made Defendants herein, and who file this memorandum in support of their accompanying Motion to Dismiss brought pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons more fully listed below, Defendants submit that Plaintiff's claims against them should be dismissed with prejudice. In the alternative, and only in the event this Court is unwilling to dismiss Plaintiff's claims, Plaintiff should be required to provide a more definite statement pursuant to Fed. R. Civ. P. 12(e) due to the vague and unformed nature of Plaintiff's First Amended Complaint.

## I.  FACTS

The thrust of Plaintiff's allegations is as follows: on November 18, 2025, Plaintiff happened upon a traffic stop being conducted by Deputy Chuck Christ and, for reasons that are not explained, began recording that encounter.[1] "Immediately" upon exiting his video, Deputy Christ commanded Plaintiff to leave the area or risk going to jail.[2] Plaintiff refused, after which time Deputy Christ notified Plaintiff that he was driving under a suspended license.[3] Due to the threat of incarceration, Plaintiff stopped recording and entered his vehicle to leave, as ordered.[4] However, Plaintiff next asserts that "Defendant Christ verbally countermanded his previous order, shouting 'Hold up,' and detained Plaintiff," after which time Deputy Christ informed Plaintiff he had an expired inspection sticker and an obstructed license plate.[5] Deputy Christ then ordered Plaintiff to "get in [his] car and drive off."[6] Plaintiff returned to the scene approximately fifty

---

[1] R. Doc. 13, ¶ 25.
[2] *Id.,* ¶ 26.
[3] *Id*, ¶¶ 27-28.
[4] *Id*., ¶ 29.
[5] *Id*., ¶¶ 30-31.
[6] *Id*., ¶ 32.

minutes later and resumed filming.[7]  Plaintiff alleges Deputy Christ placed his hand on his service weapon while staring at Plaintiff and while he was speaking on a cell phone to Calvin Turner.[8]  He does not allege Deputy Christ withdrew his weapon or spoke to Plaintiff during this second occurrence.

On November 21, 2025, Plaintiff allegedly met with Sheriff Craft and Calvin Turner, during which time Sheriff Craft allegedly refused to review video footage presented by Plaintiff.[9]  Calvin Turner allegedly reviewed the video but refused to accept a criminal complaint from Plaintiff, stating, "We do not investigate our own."[10]  It is from these allegations that Plaintiff has filed a federal lawsuit.

## II. LAW AND ANALYSIS

### A.  <u>Standards under Federal Rule of Civil Procedure 12(b)(6).</u>

As a preliminary matter, Defendants submit that this entire action may be dismissed on the sole basis that Plaintiff has advanced nothing more than generic and conclusory allegations against Defendants, which warrants dismissal under Fed. R. Civ. P. 12(b)(6). That rule allows a defendant to present a defense of failure to state a claim upon which relief can be granted and authorizes a court to dismiss a case pursuant to a motion by the defendant when a plaintiff has not stated a cause of action.  *Eason v. Holt*, 73 F.3d 600 (5th Cir. 1996).  Thereby, "[a] claim may be dismissed when a plaintiff fails to allege any set of facts in support of his claim which will entitle him to relief." *U.S. ex rel. Willard v. Humana Health Plan of Texas, Inc*., 33 F.3d 375, 379 (5th Cir. 2003).

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face*." Bell Atlantic Corp. v. Twombly*, 550 U.S. 544,

---

[7] *Id*., ¶ 36.
[8] *Id*., ¶¶ 36-40.
[9] *Id.,* ¶ 42-43.
[10] *Id*., ¶ 44.

547, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).  When reviewing a motion to dismiss, the court must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff.[11]  *In re Katrina Canal Breaches Litig*., 495 F.3d 191, 205 (5th Cir. 2007); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).  While the court must accept all the plaintiff's allegations as true, the court is not bound to accept as true bald assertions, conclusions, inferences, or legal conclusions "couched" or "masquerading" as facts. *Gooley v. Mobile Oil Corp*., 851 F.2d 513, 514 (5th Cir. 1988).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citing *Twombly, supra*.).  A pleading party unable to demonstrate plausible entitlement to relief must be shown as such at the early stages in litigation to minimize the costs of time and money by the litigants and the courts.  *Iqbal*, 556 U.S. at 678.

Dismissal of a claim is proper where, within the framework of the complaint, Plaintiff's grounds for entitlement to relief are mere labels, conclusions, and a formulaic recitation of the elements of a cause of action.  *Id*. at 678. In ruling on a Rule 12(b)(6) motion, a court generally limits its review to the face of the pleadings, accepting as true all well-pleaded facts viewing them in the light most favorable to the plaintiff.   "[T]he central issue is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief."  *Hughes v. Tobacco Inst., Inc.*, 278 F.3d 417, 420 (5th Cir. 2001).  "The [district] court may dismiss a claim when it is clear that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999).

---

[11] And, given Plaintiff's *pro se* status, Defendants feel compelled to state that they do not admit or concede that Plaintiff's allegations are true; only that, as a procedural matter, this Court is bound to accept them as true solely for the purpose of this motion.

**B.**    <u>**Any alleged events which occurred prior to November 25, 2024 are prescribed.**</u>

Plaintiff alleges that certain events occurred between the years 2011 through 2014.  Any claims arising out of those years, under § 1983 or Louisiana state law, are clearly prescribed.  In the matter of *Brown v. Pouncy*, 93 F.4th 331 (5th Cir. 2024), the United States Court of Appeals for the Fifth Circuit was asked to provide clarification as to the appropriate statute of limitations relative to claims arising under § 1983.  In doing so, the court noted that federal law does not provide a statute of limitations for § 1983 claims and so, as a consequence, courts must "turn to state law for statutes of limitations."  *Id.* at 333-34 (cleaned up).  All of Plaintiff's factual allegations occurring between the years 2011 through 2014 appear to have originated in Louisiana.

Noting that "[o]ur court has repeatedly applied Louisiana's one-year prescriptive period" to § 1983 actions, the Fifth Circuit held that it was bound to continue that practice.  *Id.* at 337-38. § 1983 actions and Louisiana state tort claims arising before July 1, 2024, are governed by a one-year prescriptive period.  *See McGregor v. LSU Bd. of Supervisors*, 3 F.3d 850, 863 (5th Cir. 1993). Prescription commenced to run from the day any injury or damage is sustained.  LSA-C.C. art. 3492.  The burden of proof is normally on the party pleading prescription; however, if on the face of the complaint it appears that prescription has run, the burden shifts to the plaintiff to prove a suspension or interruption of the prescriptive period "based on the equitable doctrine of *contra non valentem. In re Taxotere (Docetaxel) Prod. Liab. Litig.*, 995 F.3d 384, 389 (5th Cir. 2021) (cleaned up).

Due to the vague and ambiguous nature of Plaintiff's First Amended Complaint, it is unclear whether Plaintiff is attempting to state a claim relative to any alleged acts which occurred prior to July 1, 2024.  However, out of an abundance of caution, and in the event Plaintiff is

attempting to assert any claims prior to July 1, 2024—whether they arise under § 1983 or Louisiana tort law—those claims are prescribed and should be dismissed with prejudice.

**C.**     **Plaintiff's claims of excessive force and First Amendment retaliation are meritless.**

Plaintiff alleges that Deputy Christ exhibited a "threat of lethal force against a compliant citizen," running afoul of the Fourteenth Amendment.[12]  Defendants are not clear of the factual allegations giving rise to this claim.  While Plaintiff does state that Deputy Christ put his hand on his service weapon, this is not violative of § 1983.  First and foremost, mere threats are not cognizable under § 1983.  *McFadden v. Lucas,* 713 F.2d 143, 146 (5th Cir. 1983); *Hoffman v. Stulga*, 464 Fed.App'x 229, 232 (5th Cir. 2011).  Second, and to the extent Plaintiff is tying these allegations to his First Amendment Retaliation claim,[13] "the Fifth Circuit has long held that mere threats of violence do not establish § 1983 liability," even within the framework of a First Amendment retaliation claim.  *Hansard v. Zamora*, Civil Action No. 23-CV-00041-DC-DF, 2024 WL 3682240, at \*6 (W.D.Tx. Aug. 5, 2024) (citing *Gibson v. Jean-Baptiste*, 802 Fed.App'x 858, 859–60 (5th Cir. 2020) (*per curiam*) ("[W]e have consistently rejected threat-based retaliation claims."); *see Eaker v. City of Moss Point,* No. 20-CV-92, 2021 WL 771756, at \*8 (S.D.MS Feb. 26, 2021) (finding verbal abuse or intimidation "unprofessional or inappropriate" but not "ris[ing] to the level of actionable constitutional injury under § 1983.").

**D.**     **Plaintiff was not seized by Deputy Christ.**

In support of his "unlawful seizure" claim, Plaintiff vaguely alleges a "[d]etention based on fabricated pretexts and a failure to verify the alleged suspension."  Plaintiff claims that he was recording a traffic stop performed by Deputy Christ and ordered to leave the scene of that traffic

---

[12] *Id.*, Count III, page 11.
[13] And how could Defendants or this Court possibly know with any sense of certainty exactly what Plaintiff is alleging vis-à-vis his First Amendment Retaliation claim?  He simply references the matter of Turner v. Driver under "Count I: First Amendment Retaliation (42 U.S.C. § 1983) (page 7).

stop by the same deputy. In short, Plaintiff was not "seized" by Deputy Christ, nor was he subjected to an actual investigatory stop. In the matter of *United States v. Morris*, 40 F.4th 323 (5th Cir. 2022), the Fifth Circuit revisited the United States Supreme Court's holding in *California v. Hodari D.*, 499 U.S. 621, 627-28, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991), which held that "a stop occurs when someone submits to a governmental show of authority that would cause a reasonable person to believe [he] was not free to leave." *Morris*, 40 F.4th at 327. Here, Plaintiff alleges that he was *ordered* to leave by Deputy Christ, signifying that not only was he free to leave at any time, but that he was encouraged to. As such, no Fourth Amendment claim for an unreasonable seizure exists in this case.

## E.    Plaintiff was not subjected to excessive force.

Although Plaintiff alleges he was subjected to excessive force, at no point does he claim Deputy Christ exerted any physical force against him during the alleged November 18, 2025 event. Claims "that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen" are "analyzed under the Fourth Amendment and its 'reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). "To prevail on an excessive force claim, a plaintiff must show: (1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Tarver v. City of Edna*, 410 F.3d 745, 751 (5th Cir. 2005). Here, Plaintiff not only fails to allege the existence of an injury, he fails to allege Deputy Christ used any force against him whatsoever. As such, Plaintiff's excessive force claim must fail.

**F.**     **Plaintiff does not have a due process claim under the Fourteenth Amendment.**

Plaintiff's due process allegations, like every other allegation advanced by him, are unduly vague.  Plaintiff alleges that his due process rights were violated because he was given "arbitrary and contradictory orders ('Drive off' vs. 'Hold up').  Presumably, Plaintiff is bringing a substantive due process claim.  To state a plausible substantive due process claim, Plaintiff must establish that the Defendants' conduct "shocked the conscience in a constitutional sense." *Sterling v. City of Jackson, Mississippi*, 159 F.4th 361, 377 (5th Cir. 2025) (cleaned up).  Section 1983 complaints must embrace more than a generic, amorphous claim of due process violations. *Dismukes v. Hackathorn*, 802 F.Supp. 1442, 1445 (S.D.Ms. 1992) (cleaned up). Vague, nebulous due process claims are too broad, given the complexities inherent in the due process clause of the Fourteenth Amendment, from which three distinct constitutional protections originate. *Id.* (cleaned up). Substantive due process is violated by state conduct that "shocks the conscience," or constitutes force that is "brutal." *Rochin v. California*, 342 U.S. 165, 172-73, 72 S.Ct. 205, 96 L.Ed. 183 (1952).  To determine whether a substantive due process violation existed in the context of § 1983, the Fifth Circuit subsequently developed a test around the *Johnson* factors in *Shillingford v. Holmes*, 634 F.2d 263, 265 (5th Cir. 1981). Tailored to fit the Fourteenth Amendment's concept of substantive due process, the *Shillingford* test considered whether the "state officer's action [1] caused severe injuries, [2] was grossly disproportionate to the need for action under the circumstances and [3] was inspired by malice rather than merely careless or unwise excess of zeal so that it amounted to an abuse of power that shocks the conscience."  None of the *Johnson* factors are applicable to the facts asserted by Plaintiff.  As such, his due process claim must be dismissed.

## G.    Plaintiff does not have a claim for civil conspiracy.

Similarly, Plaintiff has presented nothing more than generic and conclusory claims regarding the existence of an alleged civil conspiracy between Defendants, internal to the Vernon Parish Sheriff's Office. To prove a Section 1983 claim for conspiracy, a plaintiff must show: 1) the existence of a conspiracy involving state action; and 2) "a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy." *Shaw v. Villanueva*, 918 F.3d 414, 419 (5th Cir. 2019).

"Plaintiffs who assert conspiracy claims under civil rights statutes must plead the operative facts upon which their claim is based.  Bald allegations that a conspiracy existed are insufficient." *Lynch v. Cannatella*, 810 F.2d 1363, 1369-70 (5th Cir. 1987).  To avoid dismissal, a plaintiff first must show "an actual violation of section 1983." *Hale v. Townley*, 45 F.3d 914, 920 (5th Cir. 1995).  A plaintiff cannot establish that a conspiracy occurred by merely alleging it happened through conclusory allegations with no factual support. *Hicks v. Bexar Cnty., Tex.*, 973 F.Supp. 653, 676 (W.D. Tex. 1997). Allegations of conspiracy without facts demonstrating prior agreement between defendants cannot survive a motion to dismiss. *See Hey v. Irving*, 161 F.3d 7, *3 (5th Cir. 1998) (per curiam) (holding that "plaintiffs' bare conclusory allegation that '[a]ll three defendants demonstrated a meeting of the mind' absent any specific facts showing that the defendants reached an agreement to violate their rights, is not sufficient to plead a § 1983 conspiracy") (citing *Arsenaux v. Roberts*, 726 F.2d 1022, 1023-24 (5th Cir.1982)). Additionally, a plaintiff "must show that the defendants agreed to commit an illegal act." *Arsenaux*, 726 F.2d at 1022-24.

Plaintiff's civil conspiracy allegations—to the extent they exist—exclusively involved interactions with employees of VPSO, none of which are illegal.  This is problematic for Plaintiff when considering the intracorporate conspiracy doctrine, which applies to conspiracy claims

arising under § 1983.  *See Thompson v. City of Galveston*, 79 F.Supp. 504, 509 (S.D.Tx 1997), *aff'd on other grounds*, 158 F.3d 593 (5th Cir. 1998).  As a matter of law, a conspiracy requires two or more persons or entities.  *Boyd v. Calcasieu Parish Sheriff's Office*, Civil Action No. 2013 WL 1857448, at *5 (W.D.La. May 2, 2013) (cleaned up).  The intracorporate conspiracy doctrine provides that a corporation cannot conspire with itself through its agents or employees when the acts of the agents or employees are within the scope of their employment.  *Id.*  However, the intracorporate conspiracy doctrine also applies to government entities like VPSO.  *Id.* (citing *Hilliard v. Ferguson*, 30 F.3d 649, 652–53 (5th Cir.1994)).  Here, Plaintiff is alleging that Deputy Christ, Sheriff Craft, and Chief Calvin Turner "acted in concert" to "deny Plaintiff equal protection."  Not only is this allegation impermissibly vague, but the allegation exclusively involves members of VPSO.  Therefore, any alleged conspiratorial actions between members of VPSO are barred under this doctrine.

**H.    Plaintiff does not have a valid equal protection "class of one" claim.**

In connection with Plaintiff's equal protection claim, brought under the extremely narrow "class of one" designation, Plaintiff alleges he was "targeted due to personal animus."  A class-of-one equal protection claim requires the plaintiff to "show that (1) he or she was intentionally treated differently from others similarly situated and (2) there was no rational basis for the difference in treatment."  *Lindquist v. City of Pasadena*, 669 F.3d 225, 233 (5th Cir. 2012) (citing *Village of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000)).

As a threshold matter, Plaintiff's class-of-one claim must fail because he has not sufficiently alleged he has been treated differently from others similarly situated.  *Rountree v. Dyson*, 892 F.3d 681, 685 (5th Cir. 2018).  Dismissal of class-of-one equal protection claims is appropriate at the Rule 12 stage as "[t]hreadbare recitals of the elements of a cause of action,

supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "An allegation that others are treated differently, without more, is merely a legal conclusion that [a court is] not required to credit." *Rountree*, 892 F.3d at 685. Here, Plaintiff does not even make that minimal allegation. As such, Plaintiff's equal protection claim must fail. *Id.*

## I.    <u>Plaintiff does not have a valid *Monell* claim.</u>

According to Plaintiff, Sheriff Craft has a "policy of impunity" by way of an alleged failure to conduct internal investigations of VPSO employees, thereby creating *Monell* liability. In *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the Supreme Court held that municipalities could be held liable for monetary, declaratory, and injunctive relief in § 1983 proceedings so long as the action that is alleged to be unconstitutional implements or executes an official municipal policy. An official policy may be shown through written policy statements, ordinances, or regulations; a widespread practice that is so common and well-settled as to constitute a custom that represents municipal policy; or a single act conducted by an official or entity with final policymaking authority. *Sweetin v. City of Texas City, Texas*, 48 F.4th 387, 392 (5th Cir. 2022). In order for a practice to be designated as a custom, it must have occurred for so long or so frequently that "the course of conduct warrants attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice" of municipal employees. *Martinez v. Nueces Cnty., Texas*, 71 F.4th 385, 389 (5th Cir. 2023) (quoting *Peterson v. City of Fort Worth*, 588 F.2d 838, 850-51 (5th Cir. 2009)). However, "[i]solated violations are not the persistent, often repeated constant violations that constitute custom and policy" as required for municipal Section 1983 liability. *Bennett v. City of Slidell*, 728 F.2d 762, 768 n.3 (5th Cir. 1984), *cert. denied*, 472 U.S. 1016 (1985).

A governmental unit cannot be held liable for the acts of its employees solely on a theory of respondeat superior. *Valle v. City of Houston*, 613 F.3d 536, 541 (5th Cir. 2010).  Rather, to state a claim against a sheriff under *Monell* and its progeny, a plaintiff must plead that (1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right."  *Gomez v. Galman*, 18 F.4th 769, 777 (5th Cir. 2021) (cleaned up). Plaintiff's complaint contains no allegation that the actions complained of were taken pursuant to any official policy of Sheriff Craft, outside of Plaintiff's claim Calvin Turner told him, "We do not investigate our own."

In his effort at sustaining his *Monell* claims, Plaintiff argues that Sheriff Craft and Calvin Turner "ratified" Deputy Christ's alleged conduct but fails to state with specificity how this is the case.[14]  Regardless, in doing so, Plaintiff misapprehends the narrow confines within which a "ratification" argument can be made.  Indeed, "[e]ven when an official with final policymaking authority does not directly act to set a policy, a municipality may be liable *in extreme factual situations* when that official ratifies a subordinate's decision, which requires more than the defense of a decision or action shown to be unconstitutional after the fact."  *Webb v. Town of St. Joseph*, 925 F.3d 209, 217 (5th Cir. 2019) (*see also Davidson v. City of Stafford, Tex.,* 848 F.3d 384, 395 (5th Cir. 2017) (noting that ratification "is limited to 'extreme factual situations'"); *World Wide St. Preachers Fellowship v. Town of Columbia,* 591 F.3d 747, 755 (5th Cir. 2009) (same).

In *Coon v. Ledbetter*, 780 F.2d 1158 (5th Cir. 1986), the Fifth Circuit sought guidance on ratification by examining an earlier opinion, *Grandstaff v. City of Borger*, 767 F.2d 161 (5th Cir. 1985).  In doing so, the Fifth Circuit explained that the ratification theory is to be employed in

---

[14] Plaintiff's "ratification" theory cannot apply to Calvin Turner, who is not and never has been the Sheriff of Vernon Parish.  Consequently, he is not a "policymaker" for the purpose of this litigation because, in Louisiana, "the sheriff is the final policymaker." *Guillot ex rel. T.A.G. v. Russell*, 59 F.4th 743, 750-51 (5th Cir. 2023).

extraordinarily limited circumstances. The *Coon* court evaluated *Grandstaff* and noted ratification:

> "does *not* stand for the broad proposition that if a policymaker defends his subordinates and if those subordinates are later found to have broken the law, then the illegal behavior can be assumed to have resulted from an official policy. Rather, *Grandstaff* affirmed a judgment against a Texas city on a highly peculiar set of facts: in response to a minor traffic violation, three patrol cars engaged in a high speed chase during which they fired wildly at the suspected misdemeanant; the object of this chase took refuge on an innocent person's ranch, where the entire night shift of the city police force converged and proceeded to direct hails of gunfire at anything that moved; although nobody except the police was ever shown to have fired a shot, the innocent rancher was killed when the police shot him in the back as he was emerging from his own vehicle; after this "incompetent and catastrophic performance," which involved a whole series of abusive acts, the officers' supervisors "denied their failures and concerned themselves only with unworthy, if not despicable, means to avoid legal liability." The Grandstaff panel emphasized the extraordinary facts of the case, and **its analysis can be applied only to equally extreme factual situations."**

*Coon*, 780 F.2d at 1161 (internal citations omitted) (emphasis court's).

Subsequently, the Fifth Circuit has acknowledged that "ratification is 'seldom, if ever, found by this court.'" *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 848 n. 2 (5th Cir. 2009); *see also Davidson*, 848 F.3d at 396 (holding that city could not be liable under ratification theory where chief of police reviewed plaintiff's arrest and found no unconstitutional violation even though arrest violated plaintiff's First Amendment rights because conduct by officers, "while unconstitutional, was not sufficiently extreme to qualify for finding of ratification"); *Peterson*, 588 F.3d at 848 (rejecting ratification theory where police chief later condoned officer's use of excessive force in striking plaintiff with his knee during arrest because case did not present "an extreme factual situation"); *Snyder v. Trepagnier*, 142 F.3d 791, 797-98 (5th Cir. 1998) (rejecting ratification theory where plaintiff was shot in the back while fleeing on foot from police, finding case "hardly rises to the level of the 'extraordinary factual circumstances' presented in *Grandstaff*—particularly given the absence of evidence suggesting a culture of recklessness" in the city police department).

Since *Grandstaff*, the Fifth Circuit has stated repeatedly "that a policymaker who defends conduct that is later shown to be unlawful does not necessarily incur liability on behalf of the municipality." *Peterson*, 588 F.3d at 848; *see also Davidson*, 848 F.3d at 395 (same); *Coon*, 780 F.2d at 1161 (same).  Policymakers who "simply go along with" a subordinate's decision do not thereby vest final policymaking authority in the subordinate; nor does a "mere failure to investigate the basis of a subordinate's discretionary decisions" amount to such a delegation. *Milam v. City of San Antonio*, 113 Fed.App'x 622, 627 (5th Cir. 2004). "Such limitations on municipal liability are necessary to prevent the ratification theory from becoming a theory of *respondeat superior*, which theory *Monell* does not countenance. Policymakers alone can create municipal liability, and so any violation must be causally traceable to them, not just to their subordinates." *Id.*

Moreover, Plaintiff's allegation that Calvin Turner failed to investigate Deputy Christ in response to Plaintiff's complaint is of no moment and "does not show that [the sheriff] knew of and approved the [allegedly] illegal character" of Deputy Christ's alleged actions, "determining it accorded with municipal policy." *Milam v. City of San Antonio*, 113 Fed.App'x 622, 628 (5th Cir. 2004); *see also Medina v. Ortiz*, 623 Fed.App'x 695, 701 (5th Cir. 2015) (rejecting ratification theory where sheriff accepted officer's use of force report, refused to turn over evidence until suit was filed, and defendant officer's actions); *Peterson*, 588 F.3d at 848 (refusing to find ratification based on "a policymaker who defends conduct that is later shown to be unlawful.").  And as the Fifth Circuit explained in *Peterson*, "it is hard to see how a policymaker's ineffectual or nonexistent response to an incident, which occurs well *after* the fact of the constitutional deprivation, could have *caused* the deprivation." *Id*.  Unambiguous Fifth Circuit precedent forecloses Plaintiff's ratification claim.

Further, Plaintiff does not have a constitutionally protected right to file a complaint against

a law enforcement officer and, as such, *Monell* cannot be the "moving force" behind the violation of a non-existent constitutional right.  In the matter of *Edwards v. City of Fort Worth*, Civil Action No. 4:22-cv-00429-O-BP, 2022 WL 17812930, (N.D.Tx. Nov. 28, 2022), a *pro se* Plaintiff alleged that the City of Fort Worth and a Fort Worth Police Department Sergeant denied her the "civil rights to make a report" against Grant H. Jack ("Jack") "a former DHS agent" and "former Dallas County DA Investigator" who allegedly abused Edwards for twelve years.  *Id.* at *1.  In its Report and Recommendations, the court found:

> "Refusing to file a police report does not violate the Constitution. *Santos v. Welty*, No. 5:20-cv-205-BQ, 2021 WL 1799828 (N.D. Tex. Mar. 25, 2021), rec. accepted, 2021 WL 1792130 (N.D. Tex. May 5, 2021); *Etienne v. EBR-COA*, No. 17-445-SDD-RLB, 2018 WL 2124890, at *3 (M.D. La. Apr. 17, 2018) ("Failure to file a police report, even by the police, is not a constitutional violation."), rec. adopted, 2018 WL 2125943 (M.D. La. May 7, 2018). Because there is no constitutional right to file a police report, Edwards has not pleaded a constitutional violation that would support her claim."

> *Id*. at *2.

Moreover, "isolated events" do not evince "the persistent, often repeated constant violations that constitute custom and policy as required for municipal section 1983 liability." *Gates v. Texas Dep't of Protective & Regulatory Servs*., 537 F.3d 404, 437 (5th Cir.2008) (quoting *Campbell v. City of San Antonio*, 43 F.3d 973, 977 (5th Cir.1995)); *see Burge v. Tammany Parish*, 336 F.3d 363, 370 (5th Cir.2003).  Here, Plaintiff only recounts his own alleged experience with Calvin Turner, and does not identify any other instances in which citizens were refused the ability to file a police report.  Not that it would have any true bearing on this case if he had, since there is no constitutional right to do so. For the reasons stated above, Plaintiff's *Monell* claim must fail.

## J.    Defendants are entitled to qualified immunity.

Plaintiff has sued Defendants in their individual capacities.  A state official can be sued in his individual capacity and held personally liable under § 1983 if a plaintiff can show the official,

acting under state law, caused the deprivation of a federal right. *Hafer v. Melo*, 502 U.S. 21, 25, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991). Per the United States Fifth Circuit Court of Appeals, "This standard requires more than conclusional assertions. The plaintiff must allege specific acts giving rise to a constitutional violation." *Oliver v. Scott*, 276 F.3d 736, 741 (5th Cir. 2002). As a defense to § 1983 claims, government officials may invoke qualified immunity, which shields government officials performing discretionary functions from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Club Retro, LLC v. Hilton*, 568 F.3d 181, 184 (5th Cir. 2009).

The Supreme Court emphasized that qualified immunity functions as immunity from suit, rather than a mere defense to liability. *Pearson v. Callahan*, 555 U.S. 223, 237, 129 S.Ct. 808, 818, 172 L.Ed.2d 565 (2009). "[T]he qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Malley v. Briggs*, 475 U.S. 335, 344-45, 106 S.Ct. 1092, 1097-98, 89 L.Ed.2d 271 (1986); *Mendenhall v. Riser*, 213 F.3d 226, 230 (5th Cir. 2000). "This means that even law enforcement officials who reasonably but mistakenly commit a constitutional violation are entitled to immunity." *Bazan v. Hidalgo County*, 246 F.3d 481, 488 (5th Cir. 2001) (quoting *Glenn v. City of Tyler,* 242 F.3d. 307, 312 (5th Cir. 2001)).

Once the government official asserts qualified immunity, the burden shifts to the plaintiff to negate the defense. *Collier v. Montgomery*, 569 F.3d. 214, 217 (5th Cir. 2009). To overcome a claim of qualified immunity, a plaintiff must demonstrate: 1) that the official violated a statutory or constitutional right; and 2) that the right was "clearly established" at the time of the challenged conduct. *Ashcroft v. al-Kidd*, 563 U.S. 731, 735, 131 S.Ct. 2074, 2080, 179 L.Ed.2d 1149 (2011);

*Club Retro, LLC*, 569 F.3d at 194.   Per the Fifth Circuit, a constitutional right is "clearly established" when the contours of the right are "sufficiently clear that a reasonable official would understand that what he is doing violates that right."  *Thompson v. Upshur County, TX*, 245 F.3d 447, 457 (5th Cir. 2001) (quoting *Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987).

> A defendant's actions "are held to be objectively reasonable unless all reasonable officials in the Mover's circumstances would have then known that the Mover's conduct violated the United States Constitution or the federal statute as alleged by the plaintiff." *Thompson*, 245 F.3d at 457 (cleaned up).  If the public official asserts the defense of qualified immunity, a district court must then insist that the plaintiff's claims be stated with specific allegations and that the plaintiff "chart a critical path to defeat the Mover's immunity, free of conclusion." *Floyd v. City of Kenner, La.*, 351 Fed.App'x 890, 898 (5th Cir. 2009).  Here, Defendants are entitled to qualified immunity given Plaintiff's consistent failure to advance any facts showing any Defendant herein violated his clearly established constitutional rights, as more fully explained above.

First, Sheriff Craft and Calvin Turner are entitled to qualified immunity because they are not alleged to have participated in any behavior—unconstitutional or otherwise—in this case. Personal involvement is an essential aspect of a section 1983 cause of action. *See Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983) ("Personal involvement is an essential element of a civil rights cause of action.") (citing *Rizzo v. Goode*, 423 U.S. 362, 371-72 (1976) (must be an affirmative link between injury and conduct of defendant)). The Fifth Circuit has held that a plaintiff must specify the personal involvement of each defendant in a section 1983 proceeding and "cannot make generalized allegations, nor can he support a claim based on any vicarious liability theory." *See Murphy v. Kellar,* 950 F.2d 290, 292 n.7 (5th Cir. 1992). In describing "personal involvement," the Supreme Court denoted that "there must be an affirmative link between the incident and some act by the defendant." *Rizzo*, 423 U.S. at 363; *see also Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983) (explaining that a defendant "must be either personally

involved in the acts causing the deprivation of a person's constitutional rights, or there must be a causal connection between an act of the [defendant] and the constitutional violation sought to be redressed.").

Considering that Plaintiff has not alleged either Sheriff Craft or Calvin Turner participated in any unconstitutional behavior whatsoever, they are both entitled to qualified immunity. Similarly, each and every claim advanced by Plaintiff against Deputy Christ is meritless, as more fully explained above. Because Plaintiff has also failed to articulate a constitutional violation performed by Deputy Christ, he is also entitled to qualified immunity.

**K.    <u>All of Plaintiff's Louisiana state law claims must be dismissed.</u>**

Finally, Plaintiff has advanced state law claims for "aggravated assault, public intimidation, malfeasance, IIED, and Abuse of Process." Plaintiff has failed to identify *who* these claims are directed towards. Regardless, Louisiana courts do not recognize grounds for civil liability from a criminal statute unless the Legislature expressly enacts such a cause of action. *See Gugliuzza v. K.C.M.C., Inc.,* 606 So.2d 790, 793 (La. 1992) *and Laird v. Travelers Ins. Co.,* 263 La. 199, 267 So.2d 714, 717 (La. 1972). Plaintiff has not shown that such a legislative enactment exists relative to his claims of aggravated assault, public intimidation, or malfeasance. As such, those claims must be dismissed.

To the extent Plaintiff has sought relief for the tort of intentional infliction of emotional distress, this request must be denied and dismissed. Under Louisiana law, in order to recover for intentional infliction of emotional distress, a plaintiff is required to establish three elements: "(1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result

from his conduct." *White v. Monsanto Co.*, 585 So.2d 1205, 1209 (La. 1991).  Plaintiff has not pled any allegations showing that any of Defendants' alleged actions were "extreme and outrageous," that Plaintiff suffered severe emotional distress, or that any Defendant desired to inflict severe emotional distress which was certain or substantially certain to result.

Plaintiff has also advanced an "abuse of process" claim, which originates from the common law and is recognized under Louisiana's jurisprudence as a compensable tort under LSA-C.C. art. 2315. *Palowsky v. Campbell*, 22-592 (La. App. 5 Cir. 12/14/23), 378 So.3d 226 (citing *Mini–Togs, Inc. v. Young*, 354 So.2d 1389 (La. App. 2 Cir.1978)). The tort of abuse of process involves the misuse of a process whereby a party attempts to obtain some result not proper under law. *No Drama, LLC v. Caluda*, 15-211 (La. App. 5 Cir. 10/14/15), 177 So.3d 747, 751; *Stark v. Eunice Superette, Inc.*, 457 So.2d 291 (La. App. 3 Cir.1984). An abuse of process claim has two essential elements: (1) the existence of an ulterior purpose and (2) a willful act in the use of the process not proper in the regular prosecution of the proceeding. *No Drama, LLC*, 177 So.3d at 751. In other words, generally, Plaintiffs must demonstrate that the Defendant employed a legal process for an improper reason and with an ulterior purpose or motive. *Palowsky, supra*.

In order to set forth a cause of action for abuse of process, a plaintiff must allege irregularity in the process itself. *Delcambre v. Mancuso*, 2018-833, (La.App. 3 Cir. 4/10/19), 268 So.3d 325, 331. More specifically, an abuse of process occurs when the actor employs a legal process in a manner that although technically correct, is for a wrongful and malicious purpose to obtain an unjustifiable end or an object that it was not the purpose of the particular process employed to effect. *Id.*, 2018-833 at p. 8, 268 So.3d at 331. The tort involves the misuse of a process already legally issued whereby a party attempts to obtain a result not proper under the law; at issue in such actions is the intent to use a legal process for an improper reason. *Goldstein v. Serio*, 496 So.2d

412, 415 (La.App. 4 Cir. 1986). Therefore, if the process is used to redress a legal wrong, the person who invoked the legal process cannot be said to have committed any tort, regardless of whether his motive was vicious or vindictive; on the other hand, when the person who invoked the legal process seeks by the use of such process to attain some collateral objective, outside the scope of the operation of the process employed, a tort arises. *Hebert v. Louisiana Licensed Prof'L Vocational Rehabilitation Counselors*, 2007-610, p. 9 (La.App. 3 Cir. 3/4/09), 4 So.3d 1002, 1009, *writ denied*, 2009-0750 (La. 5/22/09), 9 So.3d 144, *and writ denied*, 2009-0753 (La. 5/22/09), 9 So.3d 144; *See also Waguespack*, 99-2016 at p. 6, 768 So.2d at 291 ("A legal and legitimate use of process, to effect the result which such process is designed by law to accomplish, is not an abuse thereof. Regular use of process cannot constitute abuse, even though the user was actuated by a wrongful motive, purpose, or intent, or by malice.").

Finally, the acts alleged to constitute the abuse or perversion of the process must result in damage. *Mini-Togs, Inc*., 354 So.2d at 1391 (citing *Italian Star Line v. U.S. Shipping Bd. Emergency Fleet Corp*., 53 F.2d 359, 362 (2d Cir. 1931)).  Here, Deputy Christ was within his legal right approach Plaintiff and inquire into his activities, thereby negating Plaintiff's abuse of process claim.  *See U.S. v. Williams*, 365 F.3d 399, 404 (5th Cir. 2004) ("Under the consensual encounter arm of Fourth Amendment jurisprudence, the police can initiate contact with a person without having an objective level of suspicion, during which time the police may ask questions of the person [and] ask for identification[.]")

Finally, Plaintiff has failed to comply with Fed. R. Civ. P. 8, which requires a short and plain statement of the claim showing that the pleader is entitled to relief.  *Twombly,* 550 U.S. at 545.  Here, Plaintiff has simply strung several words together without providing any factual basis

to support his state law claims or even identify which Defendant these purported claims apply to. Plaintiff's Louisiana state law claims must be dismissed based on this reason alone.

**L.**     **Plaintiff's request for injunctive relief should be denied.**

Plaintiff seeks injunctive relief by way of "[a]n Order appointing a Federal Monitor to oversee the VPSO Internal Affairs division and Use of Force reporting" and "[p]ermanently enjoining Deputy Chuck Christ from initiating any conduct, traffic stop, or detention of Plaintiff without a warrant." The Fifth Circuit has explained that "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief"; "that a claim for injunctive relief must have its own Article III footing, separate from the past injury that supports claims for retrospective relief"; and that, "to obtain injunctive relief, the plaintiff must establish a real and immediate threat that he w[ill] again suffer similar injury in the future" and that, "[a]bsent such a showing, there is no case or controversy regarding prospective relief, and thus no basis in Article III for the court's power to issue an injunction." *In re Stewart*, 647 F.3d 553, 557 (5th Cir. 2011) (cleaned up). "Although past wrongs may help establish the threat of a future injury, they are insufficient alone." *Arkansas Project v. Shaw*, 775 F.3d 641, 648 (5th Cir. 2014).

To receive injunctive relief, Plaintiff must show: "(1) there is a substantial likelihood that the movant will prevail on the merits; (2) there is a substantial threat that irreparable harm will result if the injunction is not granted; (3) the threatened injury outweighs the threatened harm to the defendant; and (4) the granting of the injunction will not disserve the public interest." *Vazquez Barrera v. Wolf*, 455 F.Supp.3d 330, 335 (5th Cir. 2020) (cleaned up).

Federal courts may neither grant nor approve prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right.

*United States v. Hinds County Bd. of Supervisors*, 128 F.4th 616, 625 (5th Cir. 2025) (cleaned up). Courts may not issue orders that operate as vague, open-ended behavioral codes for government agencies. *Schmidt v. Lessard*, 414 U.S. 473, 476, 94 S.Ct. 713, 38 L.Ed.2d 661 (1974). Moreover, nonspecific "obey the law" injunctions cannot be sustained. *Payne v. Travenol Lab., Inc.*, 5 F.2d 895, 897-98 (5th Cir. 1978).

In *Schmidt v. Lessard*, 414 U.S. 473, 94 S.Ct. 713, 38 L.Ed.2d 661 (1974), the Supreme Court vacated a three-judge District Court's judgment which awarded a plaintiff's class declaratory and injunctive relief against the enforcement of Wisconsin's Wisconsin State Mental Health Act, after finding that the judgment, which adopted an earlier opinion of the District Court, failed to meet the specificity requirements of Fed. R. Civ. P.65(d). In a per curiam opinion, the Supreme Court described the importance of the pleading standards of Fed. R. Civ. P. 65(d), as follows:

> As we have emphasized in the past, the specificity provisions of Rule 65(d) are no mere technical requirements. The Rule was designed to prevent uncertainty and confusion on the part of those faced with injunctive orders, and to avoid the possible founding of a contempt citation on a decree too vague to be understood… Since an injunctive order prohibits conduct under threat of judicial punishment, basic fairness requires that those enjoined receive explicit notice of precisely what conduct is outlawed.

> The requirement of specificity in injunction orders performs a second important function. Unless the trial court carefully frames its orders of injunctive relief, it is impossible for an appellate tribunal to know precisely what it is reviewing… We can hardly begin to assess the correctness of the judgment entered by the District Court here without knowing its precise bounds. In the absence of specific injunctive relief, informed and intelligent appellate review is greatly complicated, if not made impossible. *Schmidt*, 414 U.S. at 474-77 (cleaned up).

Here, Plaintiff seeks the appointment of a federal monitor "to oversee the VPSO internal affairs division and Use of Force reporting" which, under the allegations of this case, is certainly not the most narrowly drawn relief possible, extends much further than necessary to correct the

alleged violation of the Plaintiff's rights, and is not the least intrusive means necessary to correct the alleged violation of those rights.[15]  Further, Plaintiff seeks an order "[p]ermanently enjoining Deputy Chuck Christ from initiating any contact, traffic stop, or detention of Plaintiff without a warrant." This is an unrealistic and prohibited limitation of Deputy Christ's functions as a law enforcement officer.  By Plaintiff's logic, Deputy Christ could personally witness Plaintiff engaging in criminal behavior but would be unable to detain Plaintiff without having a warrant in hand.  This is an untenable position.

To receive a permanent injunction, a plaintiff must first establish success on the merits and then meet a four-part test showing that: (1) it has suffered an irreparable injury; (2) remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) considering the balance of the hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) the public interest would not be disserved by a permanent injunction. *eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 390, 126 S.Ct. 1837, 164 L.Ed.2d 641 (2006).  Here, Plaintiff's request must fail because, as a threshold matter, he has not established that he can succeed on the merits of this case and has not shown that he has suffered an irreparable injury.  As such, Plaintiff's request for two separate injunctions must be denied.

**M.**     **Plaintiff's request for declaratory relief should be denied.**

Plaintiff seeks a declaratory judgment stating that VPSO's alleged "no investigation" policy is unconstitutional.  Again, under *Monell*, Plaintiff is required to show something other than an isolated incident; namely, he is required to show "repeated constant violations" which constitute a custom or practice.  In addition to only citing to a single "no investigation" incident, Plaintiff has not shown that he is entitled to the conducting of an internal investigation into sheriff's office

---

[15] And, it bears mentioning once again, Plaintiff has not brought a single valid claim pursuant to § 1983.

employees and, moreover, the "no investigation" statement was allegedly made by an employee of the Sheriff.  And, as stated above, a governmental unit cannot be held liable for the acts of its employees under § 1983 in a respondeat superior context.  For these reasons, Plaintiff's request for declaratory relief must fail.

**N.**    **Alternatively, Plaintiff should be required to provide a more definite statement.**

"Confusing complaints impose an unfair burden on litigants and judges." *McHenry v. Renne,* 84 F.3d 1172, 1179-80 (9th Cir. 1996). The Complaint imposes such a burden on Defendants because it is unspecific, wholly vague, and confusing as to which alleged facts apply to which defendants, under which Plaintiff seeks collective relief.  Further, and to the extent any causes of action have been pled, they are so vague and ambiguous that Defendants cannot determine, with any degree of certainty, what Plaintiff is alleging.

If a pleading fails to specify the allegations in a manner that provides sufficient notice, a defendant can move for a more definite statement under Fed. R. Civ. P. Rule 12(e) before responding. *Swierkiewicz v. Sorema NA.*, 534 U.S. 506, 512, 122 S.Ct. 992, 998, 152 L. Ed. 2d 1 (2002).  Rule 12(e) essentially provides a remedy for unintelligible pleadings and is successfully invoked where "(1) a responding party cannot reasonably respond to a pleading or (2) the pleading does not provide sufficient notice." *Duburque Barge & Fleeting Serv., Inc. v. Plaquemines Par. Gov't*, No. 10-0516, 2010 WL 1710372, at *2 (E.D.La. Apr. 23, 2010) (cleaned up).  Although motions for more definite statements are generally disfavored because of Rule 8's liberal pleading standards, when a pleading "fails to specify the allegations in a manner that provides sufficient notice," a Rule 12(e) motion may be appropriate. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002).  Such is the situation that faces the Court and Defendants now.  Should this Court not be inclined to grant Defendants' Rule 12(b)(6) motion, Defendants

submit that Plaintiff should be required to provide a more definite statement in accordance with Rule 12(e).

## III.  CONCLUSION

For the reasons stated herein, Plaintiff's federal and Louisiana state law claims should be dismissed with prejudice.  Alternatively, and only in the event this Court is not persuaded by Defendants' dismissal arguments, Defendants submit Plaintiff should be required to provide a more definite statement given the inherent vagueness of Plaintiff's claims and to whom they are directed.

Respectfully submitted,

RODRIGUE & ARCURI LLP

 s/ *Jason P. Wixom*
LAURA C. RODRIGUE (LSBN #30428)
BLAKE J. ARCURI (LSBN #32322)
JASON P. WIXOM (LSBN #32273)
1615 Poydras Street, Suite 1250
New Orleans, Louisiana 70112
Tel:  (504) 592-4600 Fax: (504) 592-4641
COUNSEL FOR DEFENDANTS
Email: jason@rodriguearcuri.com
            laura@rodriguearcuri.com
            blake@rodriguearcuri.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 21st day of January, 2026, a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system.  Notice of this filing will be sent by operation of the court's electronic filing system.  I also certify that a copy of the foregoing will be sent to all non-CM/ECF participant(s) by electronic mail.

     s/ *Jason P. Wixom*
JASON P. WIXOM