RECEIVED
U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA

FEB 0 4 2026

DANIEL J. McCOY, CLERK
BY_____ HS_____

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION


HUGH BRIAN STREET,

Plaintiff,

v.

DEPUTY CHUCK CHRIST, ET AL.,

Defendants.


CASE NO.: 2:25-CV-01882

JUDGE JAMES D. CAIN, JR.

MAGISTRATE JUDGE LEBLANC

---

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS (FRCP 12(b)(6)) AND ALTERNATIVE MOTION FOR LEAVE TO AMEND

---

1

# TABLE OF CONTENTS

I. PRELIMINARY STATEMENT...................................................................... 1

II. STATEMENT OF FACTS........................................................................... 2

    A. The Motive & Pattern of Impunity................................................... 2

    B. The Incident (November 18, 2025)................................................... 3

    C. The Administrative Ratification (November 21 - November 26, 2025)..... 4

    D. The Official Articulation of Policy (January 6, 2026)............................. 5

III. STANDARD OF REVIEW......................................................................... 6

IV. ARGUMENT........................................................................................... 6

    A. Plaintiff Was "Seized" Under the Fourth Amendment............................ 6

    B. Plaintiff Pled a Valid First Amendment Retaliation Claim....................... 8

    C. Monell Liability is Properly Pled.................................................... 9

    D. Qualified Immunity Must Be Denied for Each Defendant....................... 12

    E. All State Law Claims Are Properly Pled Under La. C.C. Art. 2315........... 18

    F. Historical Allegations Are Evidentiary, Not Time-Barred Claims............. 20

    G. Due Process Claim is Rooted in Fabrication of Evidence........................ 22

    H. Plaintiff Pled a Valid Equal Protection "Class of One" Claim.................. 23

    I. Remaining Claims & Relief.......................................................... 24

V. CONCLUSION......................................................................................... 24

X. Certificate of Service................................................................................. 26

## TABLE OF AUTHORITIES

**Cases**

*Alexander v. City of Round Rock,*
854 F.3d 298 (5th Cir. 2017)………………………………….........................…. 7

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007)……………………….........................................…. 6

*Bevill v. Fletcher,*
26 F.4th 270 (5th Cir. 2022)………………….........................................……….. 8, 13

*Borough of Duryea v. Guarnieri,*
564 U.S. 379 (2011)…………………………….........................................…. 14

*Breithaupt v. Abram,*
352 U.S. 432 (1957)…………………………………………………. 22

*California v. Hodari D.,*
499 U.S. 621 (1991)………………………….........................................…. 7

*City of Canton v. Harris,*
489 U.S. 378 (1989).............................................…………………………. 10, 16, 18

*Cole v. Carson,*
935 F.3d 444 (5th Cir. 2019)…………….........................................…. 13, 23

*County of Sacramento v. Lewis,*
523 U.S. 833 (1998)…………………………………………….…. 22

*Davidson v. City of Stafford,*
  848 F.3d 384 (5th Cir. 2017)...................................................... 10

*Elrod v. Burns,*
  427 U.S. 347 (1976)............................................................... 24

*Erickson v. Pardus,*
  551 U.S. 89 (2007)................................................................ 6

*Goodman v. Harris Cnty.,*
  571 F.3d 388 (5th Cir. 2009)..................................................... 12, 15, 16

*Grandstaff v. City of Borger,*
  767 F.2d 161 (5th Cir. 1985)..................................................... 12

*Greemon v. City of Bossier City,*
  65 So. 3d 1263 (La. 2011)........................................................ 19

*Green v. Thomas,*
  129 F.4th 877 (5th Cir. 2025).................................................... 19

*Haines v. Kerner,*
  404 U.S. 519 (1972).............................................................. 6

*Harlow v. Fitzgerald,*
  457 U.S. 800, 818 (1982)......................................................... 13

*Haygood v. Dies,*
  127 So. 3d 1008 (La. App. 2 Cir. 2013)........................................... 24

*Jenkins v. Jefferson Parish Sheriff's Office,*
  402 So. 2d 669 (La. 1981)……………………………….................… 20

*Johnson v. City of Shelby,*
  574 U.S. 10 (2014)…………………………….................................… 6

*Keenan v. Tejeda,*
  290 F.3d 252 (5th Cir. 2002)……………….................................… 8, 9

*Kennedy v. Sheriff of E. Baton Rouge,*
  935 So. 2d 669 (La. 2006)..…………………………….....................… 19

*Lebrane v. Lewis,*
  292 So. 2d 216 (La. 1974)..……………….........................……..… 20

*McFadden v. Lucas,*
  713 F.2d 143 (5th Cir. 1983)..…………..………………..........................… 19

*Melear v. Spears,*
  862 F.2d 1177, 1184 (5th Cir. 1989)…………………………………………… 16

*Mini-Togs, Inc. v. Young,*
  354 So. 2d 1389 (La. 1978)..………………………….......................................… 20

*Monell v. Dep't of Soc. Servs.,*
  436 U.S. 658 (1978)………………………………….........................................… 2, 9, 12, 21

*National R.R. Passenger Corp. v. Morgan,*
  536 U.S. 101 (2002)…………………………………….........................… 22

*Opulent Life Church v. City of Holly Springs,*
  697 F.3d 279 (5th Cir. 2012)...……………………………............ 24

*Pearson v. Callahan,*
  555 U.S. 223 (2009)…………………................................….. 12

*Pembaur v. City of Cincinnati,*
  475 U.S. 469 (1986)………………………............................ 9, 24

*Piotrowski v. City of Houston,*
  237 F.3d 567 (5th Cir. 2001)...……………….............…….. 12, 16

*Roberts v. City of Shreveport,*
  397 F.3d 287 (5th Cir. 2005)…………………..……………… 16

*Rodriguez v. United States,*
  575 U.S. 348 (2015)…................……………............………... 8

*Schmidt v. Lessard,*
  414 U.S. 473 (1974)...……………………................................... 24

*Snyder v. Trepagnier,*
  142 F.3d 791 (5th Cir. 1998)…………………………………. 11, 23

*Terry v. Ohio,*
  392 U.S. 1 (1968)…………........................…..............….... 7, 13

*Turner v. Driver,*
  848 F.3d 678 (5th Cir. 2017)....……………….............…... 8, 13

*United States v. Gonzalez,*
  104 F.4th 627 (5th Cir. 2024)………………………........................... 7, 17

*United States v. Mendenhall,*
  446 U.S. 544 (1980)...………………………........................... 7, 16

*United States v. Williams,*
  365 F.3d 399 (5th Cir. 2004)………………………........................... 13

*United States v. Wilson,*
  143 F.4th 647 (5th Cir. 2025)...………………………........................... 7

*Van Ooteghem v. Gray,*
  628 F.2d 488, 494 (5th Cir. 1980)………………………………………… 11

*Vantage Trailers, Inc. v. Beall Corp.,*
  567 F.3d 745 (5th Cir. 2009)………………………………………… 24

*Villarreal v. City of Laredo,*
  44 F.4th 363 (5th Cir. 2022)………………………........................... 8, 13

*Village of Willowbrook v. Olech,*
  528 U.S. 562 (2000)...………………………........................... 15, 24

*Webster v. City of Houston,*
  735 F.2d 838, 841 (5th Cir. 1984)………………………………………… 12

*White v. Monsanto Co.,*
  585 So. 2d 1205 (La. 1991)...…………………………........................... 19

*Winfrey v. Rogers,*
  901 F.3d 483 (5th Cir. 2018)............................………………….................… 13


**Statutes & Rules**

42 U.S.C. § 1983......................................................….……  Passim

La. Civ. Code art. 2315........................................................…….  18, 19

La. Civ. Code art. 2315(a)....................................................…….  18

La. Civ. Code art. 2320........................................................…….  18

La. Civ. Code art. 2324........................................................……  24

La. R.S. 14:36..................................................................…….  19

La. R.S. 14:134.................................................................…….  20

La. R.S. 14:122.................................................................…….  20

Fed. R. Civ. P. 8(a)(2)........................................................…….  25

Fed. R. Civ. P. 12(b)(6).......................................................…….  6

Fed. R. Civ. P. 12(e)..........................................................…….  25

Fed. R. Civ. P. 15(a)(2).......................................................…….  25

Fed. R. Evid. 201..............................................................…….  5, 9, 24

Fed. R. Evid. 401..............................................................…….  22

Fed. R. Evid. 403..............................................................…….  21

Fed. R. Evid. 404(b)...........................................................…….  21

Fed. R. Evid. 406..............................................................…….  21

Fed. R. Evid. 801(d)(2)........................................................…….  21

Fed. R. Evid. 801(d)(2)(B).....................................................…….  21

Fed. R. Evid. 801(d)(2)(C)…………………………………………………….. …  21

Fed. R. Evid. 803(2)…………………………………………………………....…  19

**MAY IT PLEASE THE COURT:**

Plaintiff, Hugh Brian Street, appearing Pro Se, respectfully submits this Memorandum in Opposition to the Motion to Dismiss [Doc. 29] filed by Defendants Sheriff Sam Craft, Chief Calvin Turner, and Deputy Chuck Christ.

## I. PRELIMINARY STATEMENT

This civil rights action does not arise in a vacuum; it is the culmination of a long history of harassment, retaliation, and forced exile orchestrated by the Vernon Parish Sheriff's Office ("VPSO") against the Plaintiff. The Defendants' Motion to Dismiss attempts to frame the events of November 18, 2025, as a routine, "consensual" police encounter. This narrative is objectively false. It relies on a sanitized retelling of the facts that deliberately ignores: (1) The Vendetta: Deputy Christ's explicit admission of personal animus arising from a 2013 use-of-force incident ("I done been through this... with you before"); (2) The Trap: The Deputy's verbal countermand of his own order ("Hold Up") to detain the Plaintiff unlawfully; and (3) The Fabrication: Objective video evidence proving the Deputy physically walked past the license plate he claimed was "obstructed," confirming the justification for the stop was a knowing lie. Furthermore, this case challenges a structural "Policy of Impunity" maintained by Sheriff Sam Craft. The Complaint alleges Direct Liability against the Sheriff not for the acts of his subordinates, but for his own personal refusal to view evidence of their misconduct and his maintenance of a policy of deputy impunity and "10-Day Deletion" custom designed to destroy evidence of rights violations that occur within the departments building, before any victim may obtain counsel. Because the Plaintiff has pled specific, non-conclusory facts establishing a pattern of constitutional violations ratified by the highest levels of the Department, the Motion to Dismiss must be denied.

## II. STATEMENT OF FACTS

The following facts are alleged in the First Amended Complaint and established by the Record, and must be accepted as true for the purposes of this Motion:

### A. The Motive & Pattern of Impunity

**1. The Origin of Malice (2013):** Deputy Chuck Christ harbors a personal grudge against Plaintiff arising from a 2013 incident where Christ arrested Plaintiff and used force against his mother. Christ's hostility in the present case was explicitly linked to this history when he stated: "I done been through this shit with you before, Brian" [Doc. 13 at ¶¶ 18, 35].

**2. The Pattern of Tyranny (2012):** The Department's culture of impunity is longstanding. In a 2012 incident pled to establish Monell custom, Plaintiff asked a State Trooper operating within the VPSO lobby: "Sir, wouldn't I need to commit a crime before you take me to jail?" The official responded with a specific declaration of tyranny: "Not if I decide any different!". Following this assertion that officer discretion overrides the law, VPSO Deputies swarmed the Plaintiff, took him into custody, and confined him in a Restraint Chair for the entire weekend. This use of extreme physical restraint in response to a verbal challenge confirms a Departmental custom of using excessive force to punish citizens who question authority [Doc. 13 at ¶¶ 14-15].

**3. The "Eggshell Plaintiff" (2014-2020):** Following the 2012 then 2013 incident, the systemic harassment by the VPSO forced Plaintiff to flee Vernon Parish and live in exile and homelessness for six years [Doc. 13 at ¶ 22]. This history establishes Plaintiff's heightened susceptibility to psychological injury from police threats, refuting Defendants' claim that "mere threats" caused no damage [Doc. 29-1 at pp. 5-6].

**B. The Incident** (November 18, 2025)

**4. Protected Activity:** Plaintiff stopped his vehicle on a public roadway to record Deputy Christ conducting a traffic stop [Doc. 13 at ¶ 25].

**5. The Seizure ("The Trap"):** Deputy Christ ordered Plaintiff to "drive off" or face jail. As Plaintiff attempted to comply and leave, Deputy Christ verbally countermanded his previous order, shouting "Hold up," and detained Plaintiff [Doc. 13 at ¶ 30].

**6. Proof of Fabrication (The "Walk Past"):** Deputy Christ justified the detention by claiming Plaintiff had an "Obstructed License Plate." Video evidence incorporated into the Complaint shows that Deputy Christ physically walked past the Plaintiff's license plate to approach the Plaintiff [Doc. 13 at ¶ 28; Exhibit D]. Photographic evidence attached as Exhibit A objectively demonstrates that the plate was clearly visible and unobstructed. The objective disparity between the visible plate and the Deputy's claim confirms the "obstruction" was a knowing fabrication.

**7. Proof of Malfeasance (The "Solicitation Paradox"):** Deputy Christ initially claimed Plaintiff was "driving under suspension." However, he looked at Plaintiff's ID and handed it back without running a check via radio or computer [Doc. 13 at ¶¶ 28, 32]. He then ordered Plaintiff to "drive off," proving he never believed the license was actually suspended.

**8. The Threat of Force:** During the detention, Deputy Christ placed his hand on his weapon while Plaintiff was complying with his demand for identification. [Doc. 13 at ¶¶ 33-34].

**9. Supervisory Participation:** Subsequently, upon Plaintiff's return to the scene, Deputy Christ repeated this intimidation (posturing with his hand on his weapon) while speaking on a cell phone. Defendant Chief Calvin Turner has admitted he was the supervisor on the call during this specific act of intimidation [Doc. 13 at ¶¶ 36, 40].

**10. Proof of Non-Interference:** Following the second threat, Deputy Christ returned to his duties while Plaintiff remained at the scene [Doc. 13 at ¶ 38]. This objectively proves that Plaintiff's presence was not interfering with the traffic stop, rendering the threat of arrest for "interfering" baseless.

**11. The Witness Deputy:** A Transport Deputy (Non-party witness) arrived on the scene during this second encounter [Doc. 13 at ¶ 41].

**C. The Administrative Ratification** (November 21 - November 26, 2025)

**12. Sheriff's Refusal to View Evidence:** On November 21, 2025, Plaintiff met with Sheriff Sam Craft and Chief Calvin Turner. Sheriff Craft personally refused to view the Plaintiff's video evidence of the Deputy's misconduct [Doc. 13 at ¶ 43].

**13. Chief's Refusal of Complaint:** Chief Turner reviewed the video but personally refused to accept the criminal complaint, explicitly stating: "We do not investigate our own" [Doc. 13 at ¶ 44].

**14. Spoliation as Custom:** Chief Turner admitted that building security video is automatically deleted after 10 days [Doc. 13 at ¶ 45]. This matches the method used to delete evidence of the 2012 Window Throw/Restraint Chair incident alleged in the Complaint [Doc. 13 at ¶¶ 13-17], confirming a long-standing custom of utilizing short retention periods to purge evidence of misconduct.

**15. Actual Notice & Waiver:** On November 26, 2025, Plaintiff formally served Sheriff Craft with the Verified Complaint. Sheriff Craft personally accepted the documents and stated: "Well, consider me served" [Doc. 7 at p. 2]. Admission of Prior Knowledge: During service, Sheriff Craft admitted to the process server: "I thought Hugh Street served me the other day,"

confirming he had actual knowledge of the dispute prior to formal service [Doc. 7-1 at p. 2].

Personal Animus: Sheriff Craft made personal inquiries about the process server's relationship to Plaintiff ("You must be tight, huh?"), indicating a personal rather than professional focus on the litigation [Doc. 7-1 at p. 2].

**16. Ratification via Silence:** Despite possessing Actual Knowledge of the specific allegations via the served Verified Complaint, the Sheriff has failed to contact Plaintiff to obtain his evidence or statement, proving the Sheriff has failed to conduct any serious investigation, executing his chief's stated policy "We do not investigate our own." continuing a custom of failure to investigate, supervise, train, or discipline officers that violate Plaintiff's rights, thereby ratifying the conduct through deliberate indifference and emboldening officers to freely violate citizens rights by ensuring there are no consequences.

**D. The Official Articulation of Policy (January 6, 2026)**

**17. Judicial Notice of Public Statement:** On January 6, 2026, Sheriff Sam Craft issued a "Message from the Sheriff" via the Department's public social media platform. Plaintiff requests the Court take Judicial Notice of this official statement under Fed. R. Evid. 201 (See Exhibit F).

**18. The Ratification Policy:** In this statement, Sheriff Craft explicitly articulated his policy regarding complaints against deputies he deems "malicious," stating: "**When VPSO employees break the law, I deal with those situations accordingly. But when employees are maliciously attacked on social media... I will stand up and defend the employees and this department with everything that I have.**" He further stated that insinuation of cover-ups is "pure unadulterated ignorance" [Exhibit F].

**19. Admission of Disparate Treatment:** Contradicting the Defendants' assertion in this case that they have no duty to investigate Plaintiff's complaint, the Sheriff publicly boasted: "**Every lead, every tip, and every rumor that has been received by this department has been investigated... Not a single tip has been ignored**" [Exhibit F].

**20. Hostility to First Amendment Activity:** The Sheriff characterized citizens who post critical information online as those who have "**maliciously posted completely false allegations**" and stated he would "**not go back and forth with people on social media**" [Exhibit F].

## III. STANDARD OF REVIEW

On a Fed. R. Civ. P. 12(b)(6) motion, the Court must accept all well-pleaded facts as true and view them in the light most favorable to the Plaintiff. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007). The Court must determine whether the complaint states a plausible claim for relief, not whether the Plaintiff will ultimately prevail. Furthermore, under *Johnson v. City of Shelby,* 574 U.S. 10 (2014), a plaintiff is not required to invoke a specific legal theory in the complaint, so long as the factual allegations demonstrate entitlement to relief. Finally, because Plaintiff is proceeding Pro Se, his pleadings must be "held to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner,* 404 U.S. 519, 520 (1972); see also *Erickson v. Pardus,* 551 U.S. 89, 94 (2007). This Court is required to construe Plaintiff's complaint liberally and interpret it to raise the strongest arguments that it suggests.

## IV. ARGUMENT

## A. PLAINTIFF WAS "SEIZED" UNDER THE FOURTH AMENDMENT. (Rebutting Defendants' Argument D)

The Defendants argue that "Plaintiff was not seized" because he was "ordered to leave" [Doc. 29-1 at p. 6]. This is a material misrepresentation of the Complaint. While Deputy Christ initially told Plaintiff to leave, the Complaint explicitly states what happened next:

"Defendant Christ verbally countermanded his previous order, shouting 'Hold up,' and detained Plaintiff." [Doc. 13 at ¶ 30].

Under *United States v. Mendenhall,* 446 U.S. 544 (1980), a person is seized when, by show of authority, his freedom of movement is restrained. When a uniformed Deputy Sheriff shouts "Hold Up" and demands identification, no reasonable person would feel free to leave. Plaintiff submitted to this show of authority by stopping his movement and surrendering his identification, satisfying the seizure requirement of *California v. Hodari D.,* 499 U.S. 621 (1991). Further, Plaintiff explicitly submitted to the prior order to "leave" both verbally (stating "I'll do that") and physically (ceasing recording and turning to enter his vehicle). This compliance ended the initial encounter, rendering the subsequent "Hold Up" order a distinct, new seizure that required independent reasonable suspicion under *Terry v. Ohio,* 392 U.S. 1 (1968). Furthermore, the Fifth Circuit has clearly established that a seizure must be justified by specific, articulable facts at its inception. *Alexander v. City of Round Rock*, 854 F.3d 298 (5th Cir. 2017). A traffic stop's lawful authority ceases the moment its mission is complete. *United States v. Gonzalez,* 104 F.4th 627 (5th Cir. 2024). When the Deputy ordered Plaintiff to "drive off," he confirmed the "mission" was over. The subsequent "Hold Up" was a new, suspicionless seizure. Mere observation of presumptively lawful activity—such as driving with a valid out-of-state registration—cannot form the basis for reasonable suspicion. *United States v. Wilson,* 143 F.4th 647 (5th Cir. 2025). The "Rodriguez" Violation: Furthermore, the detention was unconstitutionally prolonged. After seizing Plaintiff's ID, Deputy Christ did not run a check via radio or computer [Doc. 13 at ¶ 32].

Under *Rodriguez v. United States,* 575 U.S. 348 (2015), police may not extend a traffic stop beyond the time reasonably required to complete the mission of the stop. By holding Plaintiff's ID without actually investigating the alleged suspension, the Deputy unconstitutionally prolonged the seizure solely for the purpose of harassment. By ignoring the "Hold Up" order, Defendants are rebutting a factual scenario that does not exist in the Complaint. Plaintiff has properly pled a non-consensual seizure (detention) lacking reasonable suspicion.

## B. PLAINTIFF PLED A VALID FIRST AMENDMENT RETALIATION CLAIM.

(Rebutting Defendants' Argument C)

The Fifth Circuit has clearly established that the First Amendment protects the right to record police officers. *Turner v. Driver,* 848 F.3d 678 (5th Cir. 2017). Further, using police power to retaliate against a citizen for asking questions or gathering information is a violation of clearly established law. *Villarreal v. City of Laredo,* 44 F.4th 363 (5th Cir. 2022). To state a claim, Plaintiff must show: (1) he was engaged in constitutionally protected activity; (2) the Defendants' actions caused an injury that would chill a person of ordinary firmness; and (3) the Defendants' actions were substantially motivated by the protected activity. *Bevill v. Fletcher,* 26 F.4th 270 (5th Cir. 2022), *Keenan v. Tejeda,* 290 F.3d 252 (5th Cir. 2002).

**1. Protected Activity:** Plaintiff was recording a traffic stop from a safe distance [Doc. 13 at ¶ 25]. The 'Knowledge' Factor: Defendants' summary of the case acknowledges that 'Plaintiff... began recording that encounter' [Doc. 29-1 at p. 1]. This and Plaintiff's assertion of rights [Doc. 13 at ¶ 27] confirms the act of recording was open, obvious, and clearly observed by the Deputy, satisfying the knowledge requirement. for a retaliation claim.

Page 8 of 26

**2. Adverse Action:** Deputy Christ threatened Plaintiff with jail ("You better get in your car..."), detained him, seized his ID without cause, and physically intimidated him by placing a hand on his weapon [Doc. 13 at ¶ 26, 32, 33].

**3. Causation:** Deputy Christ explicitly linked his aggression to Plaintiff's identity and history of opposing the Deputy ("I done been through this shit with you before, Brian") [Doc. 13 at ¶ 35]. This admission proves the detention was motivated by Plaintiff's cumulative exercise of First Amendment rights—both the immediate act of recording and his prior protected activity of challenging the Deputy's authority in 2013.

**4. Culture of Hostility:** Plaintiff requests the Court take Judicial Notice under Fed. R. Evid. 201 of an official press release issued by Sheriff Craft on January 6, 2026, attached hereto as Exhibit F. In this public statement, the Sheriff characterizes citizens who post allegations online as "malicious" and states they have "no qualms about [distorting] the truth" [Exhibit F]. This official language evidences a departmental culture that views First Amendment activity not as a protected right, but as a malicious attack to be combated, providing the motive for the retaliatory detention.

Defendants argue that "mere threats" are not actionable [Doc. 29-1 at p. 5]. However, this was not a mere threat; it was a detention (seizure) combined with threats of incarceration (chilled speech). A detention is an actionable injury for First Amendment retaliation. (See *Keenan v. Tejeda*, 290 F.3d at 258–59). Because the detention here was an 'adverse governmental action' intended to 'stymie or inhibit' protected speech, it constitutes a clear injury under § 1983.

## C. MONELL LIABILITY IS PROPERLY PLED. (Rebutting Defendants' Argument I)

Defendants argue that the statement "We do not investigate our own" is merely an isolated incident by a subordinate [Doc. 29-1 at pp. 10-11]. This argument fails under *Pembaur v. City of*

*Cincinnati,* 475 U.S. 469 (1986), because as Defendant's admit the Sheriff is the final policymaker [Doc. 29-1 at pp. 11, n. 14]. Plaintiff relies on this and the following facts to establish a 14-year Pattern and Custom of Impunity:

**1. Direct Policymaker Action:** Plaintiff alleged that Sheriff Sam Craft personally refused to view the video evidence of misconduct [Doc. 13 at ¶ 43]. Despite knowing of the misconduct [Doc. 7 at p. 2] and to the day of this filing, he has failed to contact Plaintiff to obtain his statement or evidence, thereby blinding himself to the facts. Defendants cite *Davidson v. City of Stafford,* 848 F.3d 384 (5th Cir. 2017), to argue ratification is rare [Doc. 29-1 at pp. 11-12]. However, Davidson protects a policymaker who reviews evidence and makes a mistaken determination. It does not protect a policymaker who adopts a policy of Willful Blindness. By refusing to look at the dispositive evidence and ignoring Plaintiff's claims, Sheriff Craft did not make a discretionary "decision"; he abdicated his duty entirely. See Milam v. City of San Antonio, 113 Fed. App'x 622, 628 (5th Cir. 2004) (distinguishing between a mere failure to investigate and a systemic failure that vests policymaking authority in the subordinate).

The No Duty Admission: In their Motion, Defendants argue that "Plaintiff has not shown that he is entitled to the conducting of an internal investigation" [Doc. 29-1 at p. 22]. By arguing they have no legal duty to investigate misconduct, Defendants are effectively conceding the existence of the "policy of impunity" alleged by Plaintiff. This characterizes the Sheriff's refusal not as an error, but as a deliberate policy choice that constitutes "deliberate indifference" to constitutional rights. See *City of Canton v. Harris,* 489 U.S. 378, 389 (1989) (holding that a policy of inaction must amount to "deliberate indifference" to the rights of persons with whom the police come into contact).

Admission by Silence: Furthermore, Defendants' Motion fails to address or deny Plaintiff's allegation regarding the "10-Day Automatic Deletion" custom [Doc. 13 at ¶ 45]. By attacking only the "No Investigation" statement but remaining silent on the spoliation custom, Defendants have effectively waived any challenge to the sufficiency of the pleadings regarding the Department's custom of destroying evidence to conceal misconduct (See Fed. R. Civ. P. 8(b)(6)).

**2. The Official Ratification:** The Sheriff's refusal was not accidental; it was the execution of a ratified policy. In his January 6, 2026 public statement (Judicial Notice, Exhibit F), Sheriff Craft defined his policy: "When VPSO employees break the law, I deal with those situations accordingly." However, he immediately clarified his standard for 'dealing' with complaints he deems 'malicious': "I will stand up and defend the employees and this department with everything that I have." This official statement, combined with the failures to investigate in 2012 & 2013, supplies the exact "evidence suggesting a culture of recklessness" that the Fifth Circuit found missing in *Snyder v. Trepagnier*, 142 F.3d 791 (5th Cir. 1998). Furthermore, such a clear admission by a policymaker regarding his specific mode of handling complaints establishes "Official Policy" under § 1983. See *Van Ooteghem v. Gray*, 628 F.2d 488, 494 (5th Cir. 1980) (holding that an official's admission that he would treat future cases in a specific manner establishes official policy).

**3. The "Moving Force" Link:** The "Moving Force" behind Deputy Christ's 2025 violation was the cumulative certainty that he would face no consequences. This culture was built on specific, pled facts:

**Failure to Train (The 2012 Foundation):** The Department's acceptance of the 2012 Trooper's tyrannical statement ("Not if I decide any different") [Doc. 13 at ¶ 14]—made openly in the lobby in front of deputies and followed immediately by excessive force—established a custom

where officer discretion supersedes constitutional rights. Under Fifth Circuit precedent, such "persistent and widespread practice" constitutes a "Custom" having the force of law. See *Webster v. City of Houston,* 735 F.2d 838, 841 (5th Cir. 1984) (en banc). Crucially, the Trooper's boldness was enabled by the knowledge that any video of his conduct would be automatically deleted in 10 days [Doc. 13 at ¶ 16], proving the deletion policy actively encourages rights violations.

**Failure to Discipline (The 2013 Retention):** Sheriff Craft retained Deputy Christ despite the violent 2013 incident involving this same Plaintiff [Doc. 13 at ¶¶ 18-19]. This failure to discipline gave the Deputy "Constructive Approval" for aggression. See *Piotrowski v. City of Houston,* 237 F.3d 567, 580 (5th Cir. 2001).

**Failure to Supervise (The 2025 Obstruction):** Chief Turner's refusal to accept a verified complaint ("We do not investigate our own") [Doc. 13 at ¶ 44] removed the final check on officer power. See *Goodman v. Harris Cnty.,* 571 F.3d 388 (5th Cir. 2009).

**Monell Conclusion:** When a Deputy knows that: (1) past violence resulted in no discipline; (2) the administration affirmatively refuses to investigate misconduct ("We do not investigate our own"); and (3) the Sheriff has publicly vowed to "defend" him against complaints, that Deputy is emboldened to violate the law. This Systemic Culture of Impunity creates the "extraordinary factual circumstances" required by *Grandstaff v. City of Borger,* 767 F.2d 161 (5th Cir. 1985).

## D. QUALIFIED IMMUNITY MUST BE DENIED FOR EACH DEFENDANT.

(Rebutting Defendants' Argument J)

Defendants argue they are entitled to Qualified Immunity [Doc. 29-1 at p. 14]. However, immunity is denied when an official violates clearly established statutory or constitutional rights of which a reasonable person would have known. *Pearson v. Callahan,* 555 U.S. 223 (2009);

*Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982) . The Fifth Circuit has recently reaffirmed that retaliatory acts against protected speech are "clearly established" violations. *Bevill v. Fletcher,* 26 F.4th 270 (5th Cir. 2022); *Villarreal v. City of Laredo,* 44 F.4th 363 (5th Cir. 2022). Each Defendant's individual conduct violated clearly established law.

**1. Deputy Chuck Christ:** The right to record police officers is clearly established in the Fifth Circuit. See *Turner v. Driver,* 848 F.3d 678 (5th Cir. 2017). The right to be free from seizure without reasonable suspicion is the bedrock of the Fourth Amendment. See *Terry v. Ohio,* 392 U.S. 1 (1968). Deputy Chuck Christ is not entitled to qualified immunity because his conduct violated the clearly established rights to record police officers (First Amendment) and to be free from seizure without reasonable suspicion (Fourth Amendment). He detained Plaintiff solely for filming and invented multiple false pretexts ("Suspended License," "Expired Inspection," "Obstructed Plate") that were objectively untrue. Fabrication of evidence to justify a seizure violates clearly established law. See *Cole v. Carson,* 935 F.3d 444 (5th Cir. 2019). His actions were objectively unreasonable because: (a) He engaged in a deliberate "entrapment" tactic by issuing contradictory commands to leave and then hold up; (b) Defendants admitted he lacked reasonable suspicion by arguing this was a "consensual encounter," rendering the detention per se unconstitutional [Doc. 29-1 at p. 19] (citing *United States v. Williams,* 365 F.3d 399, 404 (5th Cir. 2004)); (c) The "consensual" defense contradicts the "drive off" order; (d) The "drive off" order meant Plaintiff was "free to leave," making the subsequent "Hold Up" a new, suspicionless seizure; (e) The objective video evidence showing the Deputy physically walked past a clearly visible plate proves the "obstruction" claim was a knowing fabrication [Doc. 13 at ¶ 31], and no reasonable officer in the Deputy's position could have believed a violation existed (See *Winfrey v. Rogers,* 901 F.3d 483 (5th Cir. 2018)); (f) He abandoned a handcuffed prisoner to detain a

bystander, confirming personal malice [Doc. 13, Exhibit D]; (g) He engaged in multiple acts of gratuitous physical intimidation by posturing with his weapon while plaintiff was complying with his demand for identification and again while speaking over the phone to his supervisor [Doc. 13 at ¶¶ 33, 40]; and (h) His claim of interference is objectively disproven by his return to duty while Plaintiff remained over 50 yards away [Doc. 13 at ¶¶ 38, 36]. These objectively unreasonable actions caused psychological injury and reactivated past trauma under the "Eggshell Plaintiff" doctrine.

**2. Chief Calvin Turner:** is not entitled to qualified immunity because his conduct violated clearly established First Amendment and Equal Protection rights. Defendants argue Turner is not liable because he merely "refused to file a report" [Doc. 29-1 at p. 14] and cannot "ratify" policy. This mischaracterizes the violation. Turner is liable for Active Obstruction of the Right to Petition and Discriminatory Enforcement.

**Active Obstruction of the Right to Petition (First Amendment):** The First Amendment protects a citizen's right to "petition the Government for a redress of grievances," which extends to complaints of police misconduct. *Borough of Duryea v. Guarnieri,* 564 U.S. 379, 387 (2011). While Defendants cite Edwards to argue there is no right to force an investigation, there is a clearly established right to file the petition without active government obstruction. By personally viewing the video evidence of a crime and then explicitly refusing to accept the complaint with the statement "We do not investigate our own" [Doc. 13 at ¶ 44], Chief Turner did not merely "fail to act"; he actively blocked Plaintiff's access to the grievance process. Crucially, Defendants do not argue that Turner reviewed the evidence and found no wrongdoing (which might be protected as a discretionary decision under Davidson); rather, they defend his absolute

refusal to process the complaint at all. A reasonable official knows they cannot categorically ban citizens from filing complaints against deputies based on their status.

**Discriminatory Denial of Protection (Equal Protection):** Turner's justification—"We do not investigate our own"—is a confession of class-based discrimination. He admitted to applying a different legal standard to "his own" (deputies) than to the general public. This violates the Equal Protection Clause under a "Class of One" theory, as there is no rational basis for exempting deputies from the criminal complaint process. See *Village of Willowbrook v. Olech,* 528 U.S. 562 (2000). A reasonable supervisor knows that creating a "protected class" of officers who are immune from complaints is unconstitutional.

**Supervisory Liability (The "Policy" Admission):** Turner is liable for the Deputy's underlying conduct not because of "ratification" (a policymaker theory), but because his statement confirms he maintained and enforced a pre-existing custom of impunity. His declaration that "We do not investigate our own" was not a new decision made on November 21st; it was an articulation of the standing policy that existed on November 18th. Crucially, this policy of non-investigation is consistent with the Department's handling of the 2012 "Restraint Chair" incident and the 2013 "Use of Force" incident, neither of which—to Plaintiff's knowledge—ever resulted in an Internal Affairs investigation [Doc. 13 at ¶¶ 14, 18, 19]. By enforcing this decade-long custom of deliberate indifference, Turner provided the "moving force" that emboldened Deputy Christ to act. See *Goodman v. Harris Cnty.,* 571 F.3d 388 (5th Cir. 2009) (supervisory liability attaches where a failure to supervise amounts to deliberate indifference).

**Direct Participation (The Phone Call):** Finally, Turner was on the phone with Deputy Christ during a retaliatory detention [Doc. 13 at ¶ 40]. While Defendants may argue the Deputy was merely "standing there," his conduct constituted Seizure under *United States v. Mendenhall,* 446

U.S. 544 (1980). A seizure occurs when, by "show of authority," a reasonable person would not feel free to leave. Here, the Deputy's "Show of Authority" was established by the totality of the circumstances: after threatening Plaintiff ("You're fixing to find out") [Doc. 13 at ¶ 37], the Deputy reactivated his threat by staring at Plaintiff and deliberately gripping his weapon. [Doc. 13 at ¶ 39] No reasonable recently threatened citizen, would feel free to turn their back on an officer posturing with a firearm. By remaining on the line while his subordinate utilized this "Show of Authority" to detain a citizen for filming, Turner acquiesced in the ongoing unconstitutional retaliation. See *Melear v. Spears*, 862 F.2d 1177, 1184 (5th Cir. 1989) (holding a supervisor liable where he was present and acquiesced in the unconstitutional conduct)

**3. Sheriff Sam Craft:** is not entitled to qualified immunity because he personally participated in the violation by actively enforcing a policy of deliberate indifference and ratifying the specific misconduct. Supervisors are liable under § 1983 if they implement an unconstitutional policy that is the "moving force" of the injury. *Goodman v. Harris Cnty.*, 571 F.3d 388 (5th Cir. 2009).

"It may happen that... the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." — *Roberts v. City of Shreveport*, 397 F.3d 287, 292 (5th Cir. 2005) (quoting *City of Canton v. Harris*, 489 U.S. 378 (1989)).

Sheriff Craft's conduct meets this standard of deliberate indifference in four specific ways:

**1. Failure to Discipline ("Moving Force"):** It is clearly established that a supervisor is liable for retaining an officer with a known propensity for rights violations. By retaining Deputy Christ despite the violent 2013 incident involving Plaintiff [Doc. 13 at ¶¶ 18-23], Sheriff Craft was Deliberate Indifferent to the risk that Christ would abuse his authority again. This failure to discipline gave "constructive approval" for the Deputy's aggression and was the "moving force" behind the 2025 violation. See *Piotrowski v. City of Houston*, 237 F.3d 567, 580 (5th Cir. 2001).

**2. Active Ratification:** Unlike the passive "failure to act" in Davidson, Sheriff Craft took affirmative steps to ratify the misconduct. In his January 6, 2026 public statement [Exhibit F], he explicitly vowed to "defend the employees... with everything that I have" against complaints he deems "malicious." This is not merely a failure to investigate; it is the active implementation of a policy that shields officers from accountability. This public declaration of bias proves his subjective intent to violate Plaintiff's Due Process rights.

**3. Willful Blindness:** Sheriff Craft personally refused to view the video evidence [Doc. 13 at ¶ 43]. Defendants' argument they have no duty to investigate [Doc. 29-1 at p. 22] effectively confirms a custom of Failure to Supervise. A reasonable official knows adopting the "ostrich defense"—deliberately closing one's eyes to objective evidence of a crime—constitutes an abdication of duty. See *United States v. Gonzalez*, 328 F.3d 543, 548 (9th Cir. 2003) (applying willful blindness in the context of official liability).

**4. Actual Knowledge & Personal Animus:** Finally, despite possessing Actual Knowledge via formal service ("Well, consider me served") [Doc. 7-1 at p. 3], the Sheriff failed to investigate, thereby ratifying the conduct through deliberate indifference. His personal commentary to the process server ("I hope the pay's good. You must be tight, huh?") [Doc. 7-1 at p. 2] reveals his Personal Animus and a lack of professional objectivity.

**Constructive Notice:** The specific facts pled—the formal 2012 legal request for video evidence of the "Restraint Chair" incident and the public 2013 litigation involving Deputy Christ—created Constructive Notice of the Deputy's propensity for aggression and Plaintiff's fear of police aggression. In a small department like Vernon Parish, a Sheriff "knew or should have known" of such significant controversies involving his officers. Ignoring this known propensity and failing

to investigate, discipline, retrain, or supervise in these matters constitutes Deliberate Indifference under *City of Canton v. Harris,* 489 U.S. 378 (1989).

**Conclusion on Craft:** A reasonable Sheriff knows that: (1) retaining a violent deputy; (2) publicly vowing to "defend" officers against valid complaints; and (3) refusing to view video evidence of misconduct, violates his duty to the public and the Constitution. Craft's conduct was not a "mistaken judgment"; it was a deliberate strategy of impunity.

## E. ALL STATE LAW CLAIMS ARE PROPERLY PLED UNDER LA. C.C. ART. 2315.

(Rebutting Defendants' Argument K)

Clarification of Parties: Defendants argue that Plaintiff "failed to identify who these claims are directed towards" [Doc. 29-1 at p. 17]. To cure any feigned confusion: (1) Assault, Battery, IIED, Negligence, and False Imprisonment: These claims are directed at Deputy Chuck Christ (as the actor) and Sheriff Sam Craft (vicariously liable as the employer under La. Civ. Code art. 2320).

(2) Malfeasance in Office, Abuse of Process, and Conspiracy: These claims are directed at Chief Calvin Turner (for refusing the complaint), Sheriff Sam Craft (for refusing review and vicarious liability), and Deputy Chuck Christ (for the pretextual stop).

Defendants argue [Doc. 29-1 at p. 17] that "Aggravated Assault," "Public Intimidation," and "Malfeasance" are criminal statutes that do not convey civil liability. This ignores La. Civ. Code art. 2315(A), which states: "Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." Plaintiff pleads these acts as "Fault" under Article 2315. Under Louisiana's system of fact pleading, Plaintiff is entitled to relief under any legal theory supported by the factual allegations.

**1. Assault:** Plaintiff pleads actionable Assault based on two distinct acts. Incident 1: Deputy Christ verbally threatened jail and escalated the threat by placing his hand on his weapon.

Incident 2: The Deputy again postured with his hand on his weapon while staring at Plaintiff.
Defendants note the Deputy "did not speak" [Doc. 29-1 at p. 2] during this second encounter,
confirming the posturing was a silent, gratuitous act of intimidation. Defendants' argument "mere
threats" are not actionable under § 1983 [Doc. 29-1 at p. 5] effectively concedes the factual
premise that threats were made, confessing to the state law tort of Assault (defined as an attempt
to commit a battery, or the intentional placing of another in reasonable apprehension of receiving
a battery) (See La. R.S. 14:36); and while mere threats may not be actionable under § 1983, they
are under state law (citing *McFadden v. Lucas,* 713 F.2d 143 (5th Cir. 1983)). "Whoa, hey man
chill out... you're reaching for your weapon" [Doc. 13 at ¶ 34] (See Fed. R. Evid. 803(2)).

**2. False Imprisonment:** Plaintiff has pled facts establishing detention without legal authority.
Defendants' reliance on the 'consensual encounter' defense [Doc. 29-1 at p. 19] renders the "Hold
Up" confinement per se unlawful, satisfying all elements of False Imprisonment under Louisiana
law (See *Kennedy v. Sheriff of E. Baton Rouge,* 935 So. 2d 669, 690 (La. 2006), *Green v.
Thomas,* 129 F.4th 877 (5th Cir. 2025)).

**3. IIED:** A uniformed Deputy Sheriff abandoning a prisoner to harass a bystander and placing
his hand on his weapon constitutes "extreme and outrageous" abuse. Defendant's knowledge of
Plaintiff's prior trauma ("I done been through this...") [Doc. 13 at ¶ 35] and its reactivation
satisfies the "severe emotional distress" element. See *White v. Monsanto Co.,* 585 So. 2d 1205
(La. 1991).

**4. Negligence:** Alternatively, Defendants' actions constitute Negligence under La. Civ. Code art.
2315 and *Greemon v. City of Bossier City,* 65 So. 3d 1263 (La. 2011).

**5. Abuse of Process / Malfeasance:** Plaintiff alleges the Deputy used the legal process of
detention for an ulterior motive. By ordering a driver he claimed was 'suspended' to operate a

vehicle [Doc. 13 at ¶¶ 26, 32], the Deputy either knowingly solicited a crime or knowingly lied, satisfying the mens rea for Malfeasance. If the approach was not consensual (as proven by the "Hold Up"), the Abuse of Process claim survives. See Mini-Togs, Inc. v. Young, 354 So. 2d 1389 (La. 1978). Chief Turner's refusal to accept reports [Doc. 29-1 at p. 14] proves the intent required for Malfeasance (See La. R.S. 14:134).

**6. Public Intimidation:** The Deputy's threats of jail and physical intimidation were specifically designed to influence Plaintiff's conduct as a witness, constituting "Fault" (See La. R.S. 14:122).

**7. Vicarious & Direct Liability:** Sheriff Craft is vicariously liable for all state law torts committed by his Deputy and directly liable for his own negligence in refusing to view evidence. The "Respondeat Superior" Admission: In their Motion [Doc. 29-1 at p. 11], Defendants argue that "A governmental unit cannot be held liable... solely on a theory of respondeat superior" regarding the Federal claims. Defendants remain silent, however, regarding respondeat superior liability for the State Law claims. Under Jenkins, a Sheriff is strictly liable for the state torts of his deputies. By failing to challenge this liability in their Motion, Defendants have effectively conceded that if the State Law claims survive dismissal, Sheriff Craft is vicariously liable under *Jenkins v. Jefferson Parish Sheriff's Office,* 402 So. 2d 669 (La. 1981), and *Lebrane v. Lewis,* 292 So. 2d 216 (La. 1974).

## F. HISTORICAL ALLEGATIONS ARE EVIDENTIARY, NOT TIME-BARRED.

(Rebutting Defendants' Argument B)

Defendants argue that allegations regarding events from 2011–2014 should be dismissed as prescribed [Doc. 29-1 at p. 4]. This argument fundamentally misunderstands the Complaint. These historical facts do not seek damages as independent causes of action (time-barred), but are admissible evidence supporting timely claims under multiple Federal Rules of Evidence:

**Fed. R. Evid. 406 (Habit; Routine Practice):** The 2012 refusal to produce video [Doc. 13 at ¶ 16] based on a "10-Day Deletion" policy is admissible to prove the Department's Routine Practice of spoliation. This evidence proves Causation and Injury for the current Monell claim: it shows the Sheriff's policy effectively immunizes deputies from accountability by systematically destroying evidence of misconduct before a victim can obtain counsel. This "evidentiary injury"—the deprivation of the means to seek redress—is a direct, foreseeable result of the Sheriff's custom, making the 2012 incident highly relevant to the current damages.

**Fed. R. Evid. 404(b) (Motive, Intent, & Knowledge):** The 2013 violent altercation involving Deputy Christ [Doc. 13 at ¶¶ 18-19] is admissible to prove Motive (personal vendetta), Intent (to harass rather than enforce traffic laws), and Knowledge (Deputy Christ knew Plaintiff and his history of publicly opposing officer abuse). [Doc. 13 at ¶ 20] This evidence rebuts the Defense's claim the 2025 detention was "routine" and proves the detention was retaliatory.

**Fed. R. Evid. 801(d)(2) (Admission by Party-Opponent):** The 2012 statement by the State Trooper ("Not if I decide any different") is not hearsay. It is admissible under Fed. R. Evid. 801(d)(2)(B) because the deputies present adopted the statement. By immediately swarming and assisting Plaintiff's arrest on the Trooper's assertion that he can arrest without a crime, the deputies manifested their belief in and adopted that statement as department policy. Furthermore, it is admissible under Fed. R. Evid. 801(d)(2)(C) because, by permitting the Trooper to operate within the restricted VPSO lobby and direct VPSO personnel, the Sheriff effectively authorized the Trooper to make statements concerning enforcement in that facility. [Doc. 13 at ¶¶ 14-15]

**Fed. R. Evid. 403 (Probative Value Outweighs Prejudice):** The probative value of this history is substantial and outweighs any prejudice. Because the central dispute is the Deputy's state of mind (Retaliation vs. Law Enforcement), the 12-year history of animus is the only way to

explain the ferocity of the 2025 encounter. Excluding this context would mislead the jury into viewing the events in a vacuum, unfairly prejudicing the Plaintiff. [Doc. 13 at ¶ 23]

**Fed. R. Evid. 401 (Relevance):** All historical facts pled are relevant because they have a tendency to make the existence of the Sheriff's "Policy of Impunity" and Deputy Christ's "Retaliatory Motive" more probable than they would be without the evidence. See *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002), which confirms that time-barred acts may be used as background evidence in support of a timely claim.


## G. DUE PROCESS CLAIM IS ROOTED IN FABRICATION OF EVIDENCE, AND ADMINISTRATIVE OBSTRUCTION, NOT JUST SEIZURE.

(Rebutting Defendants' Argument F)

Defendants argue that Plaintiff's Due Process claim must be dismissed because the alleged conduct does not "shock the conscience". This argument ignores the extreme nature of the "Trap" and the "Administrative Obstruction."

While the Fourth Amendment governs the initial seizure, the Fourteenth Amendment protects against executive action that is "arbitrary in the constitutional sense" and "abusive of power." *County of Sacramento v. Lewis*, 523 U.S. 833 (1998). To survive dismissal, the conduct must be "so brutal and offensive that it does not comport with traditional ideas of fair play and decency." *Breithaupt v. Abram*, 352 U.S. 432 (1957).

**1. The "Entrapment" Shocks the Conscience:** It is "offensive to traditional ideas of fair play" for a uniformed deputy to order a citizen to "drive off" (under threat of jail) and then — split-seconds later — detain that same citizen as he attempts to comply. [Doc. 13 at ¶¶ 26, 30] This was not a law enforcement action; it was a psychological trap designed to manufacture a

pretext for harassment. Deliberately using the color of law to "game" a citizen into a detention purely to settle a personal score is the definition of arbitrary conduct that shocks the conscience.

**2. Fabrication of Evidence:** The Complaint alleges Deputy Christ fabricated the "obstructed plate" charge while physically walking past the clearly visible plate. [Doc. 13 at ¶ 31; Exhibit A; Exhibit D] The Fifth Circuit has held that "deliberate fabrication of evidence" to justify a detention violates Due Process. *Cole v. Carson,* 935 F.3d 444 (5th Cir. 2019).

**3. Administrative Obstruction ("Impunity" Policy):** Most critically, the Defendants' conduct post-incident shocks the conscience. A "system of justice" where a Chief Deputy views evidence of misconduct but refuses to accept a criminal complaint because "We do not investigate our own" is fundamentally "brutal" to the rule of law. See *Snyder v. Trepagnier,* 142 F.3d 791, 798 (5th Cir. 1998) This explicit refusal to protect a specific class of citizens combined with a "10-day auto-deletion" [Doc. 13 at ¶¶ 43-45] custom designed to purge evidence before victims can act constitutes an arbitrary abuse of power no reasonable government interest can justify.

**4. No Preemption:** To the extent Defendants imply this is solely a Fourth Amendment issue, that argument fails regarding the administrative defendants. Chief Turner and Sheriff Craft did not "seize" the Plaintiff; they arbitrarily denied him access to the grievance process and enforced a policy of impunity. These administrative acts are governed solely by the Due Process Clause.

## H.  PLAINTIFF HAS PLED VALID EQUAL PROTECTION "CLASS OF ONE" CLAIM.

(Rebutting Defendants' Argument H)

Plaintiff identifies the class as "all other citizens lawfully present in the vicinity." The irrationality and discriminatory intent is proven by the video evidence showing Deputy Christ abandon a prisoner to harass Plaintiff [Doc. 13, Exhibit D]. Additionally, the Deputy physically walked past the license plate he claimed was "obstructed" [Doc. 13 at ¶ 31]. Objective video and

photographic evidence confirms the plate was clearly visible. Alleging an obstruction where none exists—while physically present at the object in question—proves the disparate treatment lacked any rational basis. See *Village of Willowbrook v. Olech,* 528 U.S. 562 (2000). Furthermore, Defendants' discriminatory intent is proven by the Sheriff's own contradictory public admissions. While Defendants argue they have no duty to investigate Plaintiff's complaint [Doc. 29-1 at p. 22], Sheriff Craft publicly boasted in a January 6, 2026 press release (Judicial Notice requested under Fed. R. Evid. 201) that: "**Every lead, every tip, and every rumor that has been received by this department has been investigated... Not a single tip has been ignored**" [Exhibit F]. By adopting a policy of investigating every "rumor" for the general public, but refusing to view evidence of deputy misconduct or investigate a well documented and verified complaint for the Plaintiff, Defendants have treated Plaintiff differently than "all other citizens," satisfying the Class of One standard.

**I. REMAINING CLAIMS & RELIEF** (Rebutting Arguments G, L, M) Plaintiff has properly pled State Law Conspiracy under La. Civ. Code art. 2324. The intracorporate defense fails where agents act on personal malice. See *Haygood v. Dies,* 127 So. 3d 1008 (La. App. 2 Cir. 2013). Further, Plaintiff retains standing for Injunctive and Declaratory Relief under *Pembaur v. City of Cincinnati,* 475 U.S. 469 (1986) because the "No Investigation" policy and "10-Day Deletion" custom present an ongoing threat of future injury (See *Vantage Trailers, Inc. v. Beall Corp.,* 567 F.3d 745 (5th Cir. 2009)), rendering internal remedies futile (See *Opulent Life Church v. City of Holly Springs,* 697 F.3d 279 (5th Cir. 2012); *Elrod v. Burns,* 427 U.S. 347 (1976); *Schmidt v. Lessard,* 414 U.S. 473 (1974)).

**V. CONCLUSION**

This case is not about a routine traffic stop; it is about the weaponization of law enforcement authority to settle a personal score. The Defendants ask this Court to dismiss the case by ignoring the 14-year history of animus that fueled the encounter and the "Policy of Impunity" that ratified it. To grant this Motion, the Court has to ignore the objective video evidence proving that Deputy Christ physically walked past the license plate he claimed was obstructed [Doc. 13 at ¶ 31]. It has to ignore the Deputy's own admission of a vendetta ("I done been through this... before"). Most critically, it has to validate a departmental custom where a Chief of Operations can explicitly refuse a valid criminal complaint stating "We do not investigate our own," and a Sheriff can insulate himself from liability by personally refusing to view evidence of his deputies' misconduct [Doc. 13 at ¶¶ 43-44]. Plaintiff has pled specific, non-conclusory facts establishing that he was entrapped, detained without cause, and terrorized by an officer acting on a decade-old grudge, all under the protection of a Sheriff who chooses willful blindness over duty. Fed. R. Civ. P. 8(a)(2) requires a short plain statement. Defendants' detailed attack proves a More Definite Statement is unnecessary under Fed. R. Civ. P. 12(e); however, should the Court find any deficiency, Plaintiff requests Leave to Amend pursuant to Fed. R. Civ. P. 15(a)(2). Because these facts state plausible claims for relief under 42 U.S.C. § 1983 and Louisiana Law, the Defendants' Motion to Dismiss must be DENIED.


Respectfully submitted,


Hugh Brian Street, Plaintiff Pro Se

385 RC Stephens Rd, Leesville, LA 71446 | 337-404-6465 | brian.street@southerntreeninjas.com

CERTIFICATE OF SERVICE

I hereby certify that on February 4, 2026, I filed the foregoing Opposition and Exhibit F via the Clerk of Court and served a copy via U.S. Mail to:

Jason P. Wixom

Rodrigue & Arcuri, LLP

1615 Poydras Street, Suite 1250

New Orleans, LA 70112

Hugh Brian Street

Plaintiff Pro Se