# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### LAKE CHARLES DIVISION

**HUGH BRIAN STREET**                     **CASE NO.  2:25-CV-01882**

**VERSUS**                                **JUDGE JAMES D. CAIN, JR.**

**CHUCK CHRIST ET AL**                    **MAGISTRATE JUDGE LEBLANC**

## MEMORANDUM RULING

Before the Court is a "Motion to Dismiss Pursuant to Fed. R. of Civ. P. 12(b)(6) for Failure to State a Claim or, Alternatively, Motion for More Definite Statement Pursuant to Fed. R. Civ. P. 12(e) (Doc. 29) filed by Defendants, Sheriff John Craft, Chief Calvin Turner, and Deputy Chuck Christ (collectively referred to as "Defendants").

## BACKGROUND

In this lawsuit, Plaintiff Hugh Brian Street has named as Defendants, Sheriff Sam Craft, Chief Calvin Turner, Deputy Chuck Christ, and the Louisiana Sheriffs Law Enforcement Program ("LSLP")[1] concerning an alleged interaction between Deputy Christ and Plaintiff on November 18, 2025. Plaintiff alleges that on this date, he happened upon a traffic stop being conducted by Deputy Christ, and for an unknown reason, he began recording the encounter.[2] Upon exiting his vehicle, Deputy Christ ordered Plaintiff to leave the area or risk going to jail.[3] Plaintiff alleges he verbally refused.[4] Deputy Christ then

---

[1] The Court is dismissing LSLP in a separate Memorandum Ruling and Judgment.
[2] Doc. 13, ¶ 25.
[3] *Id.* ¶ 26.
[4] *Id.*  ¶ 27.

asserted that Plaintiff was driving under suspension.[5] Thereafter, Plaintiff stopped recording and chose to leave.[6]

Deputy Christ then ordered Plaintiff to "hold up,"[7] and subsequently detained Plaintiff for having an expired inspection and an obstructed license plate.[8] Shortly thereafter, Deputy Christ instructed Plaintiff to leave.[9] Plaintiff drove away but returned to the scene on foot to resume filming.[10] Deputy Christ then resumed "his duties," however, Plaintiff alleges that Deputy Christ intimidated him by placing his hand on his gun and "staring at Plaintiff."[11]

Plaintiff has asserted the following causes of action: Count I--First Amendment Retaliation, 42 U.S.C. § 1983, Count II—Unlawful Seizure, 42 U.S.C. § 1983, Count III—Excessive Force/Assault, 42 U.S.C. § 1983, Count IV—Monell Liability as to Sheriff Craft, Count V—State Law claims of aggravated assault, public intimidation, malfeasance, IIED, and abuse of process, Count VI—Due Process (14th Amendment), Count VII—Conspiracy (42 U.S.C. § 1985), Count VIII—Equal Protection "Class of One" (14th Amendment), Count IX—Direct Action (La. R.S. 22:1269).

## RULE 12(b)(6) STANDARD

Rule 12(b)(6) allows for dismissal when a plaintiff "fail[s] to state a claim upon which relief can be granted." When reviewing such a motion, the court should focus on the

---

[5] *Id.* ¶ 28.
[6] *Id.* ¶ 29.
[7] *Id.* ¶ 30.
[8] *Id.* ¶ 31.
[9] *Id.* ¶ 32.
[10] *Id.* ¶ 36.
[11] *Id.* ¶¶ 38, 39.

complaint and its attachments. *Wilson v. Birnberg*, 667 F.3d 591, 595 (5th Cir. 2012). The court can also consider documents referenced in and central to a party's claims, as well as matters of which it may take judicial notice. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000); *Hall v. Hodgkins*, 305 Fed. App'x 224, 227 (5th Cir. 2008) (unpublished).

Such motions are reviewed with the court "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiff." *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 461 (5th Cir. 2010). However, "the plaintiff must plead enough facts 'to state a claim to relief that is plausible on its face.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Accordingly, the court's task is not to evaluate the plaintiff's likelihood of success but instead to determine whether the claim is both legally cognizable and plausible. *Lone Star Fund v. (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

## LAW AND ANALYSIS

Defendants move to dismiss Plaintiff's 42 U.S.C. § 1983 action with prejudice; Defendants argue that Plaintiff has failed to allege a single valid claim under either the United States Constitution or Louisiana State law. Defendants move to dismiss each of Plaintiff's numerous claims, or in the alternative, Defendants request that Plaintiff be required to provide a more definite statement of his claims.

*Prescription*

Defendants move to dismiss any claims made by Plaintiff that are prescribed. In his Complaint Plaintiff refers to events that occurred beginning in 2011 through 2014 between him, his mother, and the Veron Parish Sheriff's Office ("VPSO").

Federal law does not provide a statute of limitations for § 1983 claims. Consequently, courts rely on state law. *Brown cv. Pouncy*, 93 F.4th 331 (5th Cir. 2024). Noting that "[o]ur court has repeatedly applied Louisiana's one-year prescriptive period" to § 1983 actions, the Fifth Circuit held that it was bound to continue that practice. *Id.* at 337-38.

Section 1983 actions and Louisiana state tort claims are governed by a one-year prescriptive period. *See McGregor v. LSU Bd. of Supervisors*, 3 F.3d 850, 863 (5th Cir. 1993). Prescription commences to run from the day any injury or damage is sustained. LSA-C.C. art. 3492. The burden of proof is normally on the party pleading prescription; however, if on the face of the complaint it appears that prescription has run, the burden shifts to the plaintiff to prove a suspension or interruption of the prescriptive period "based on the equitable doctrine of *contra non valentem. In re Taxotere (Docetaxel) Prod. Liab. Litig.*, 995 F.3d 384, 389 (5th Cir. 2021) (cleaned up).

Plaintiff alleges that the subject incident occurred on November 18, 2025.[12] The Court agrees with Defendants that to the extent Plaintiff is attempting to bring any claim that occurred prior to November 18, 2024, said claim(s) are prescribed.

---

[12] Doc. 1.

*Excessive force and First Amendment retaliation claims*

Plaintiff alleges that Deputy Christ exhibited a "threat of lethal force against a compliant citizen," running afoul of the Fourteenth Amendment.[13] The Court has carefully reviewed the Complaint, which does not allege that Deputy Christ put his hand on Plaintiff or even touched him. Mere threats are not cognizable under § 1983. *McFadden v. Lucas,* 713 F.2d 143, 146 (5th Cir. 1983); *Hoffman v. Stulga*, 464 Fed.App'x 229, 232 (5th Cir. 2011).

To the extent Plaintiff is tying these allegations to his First Amendment Retaliation claim, "the Fifth Circuit has long held that mere threats of violence do not establish § 1983 liability," even within the framework of a First Amendment retaliation claim. *Hansard v. Zamora*, Civil Action No. 23-CV-00041-DC-DF, 2024 WL 3682240, at *6 (W.D.Tx. Aug. 5, 2024) (citing *Gibson v. Jean-Baptiste*, 802 Fed.App'x 858, 859–60 (5th Cir. 2020) (*per curiam*) ("[W]e have consistently rejected threat-based retaliation claims."); *see Eaker v. City of Moss Point,* No. 20-CV-92, 2021 WL 771756, at *8 (S.D.MS Feb. 26, 2021) (finding verbal abuse or intimidation "unprofessional or inappropriate" but not "ris[ing] to the level of actionable constitutional injury under § 1983.").

Plaintiff's only allegation is that Deputy Christ ordered Plaintiff to leave by telling him he better get in [his] car.  Plaintiff insists that he and Deputy Christ had a "history." The "history" that Plaintiff relies upon allegedly took place in 2013, notably over a decade prior to the subject incident.  As such, this alleged "history" is too attenuated to even be

---

[13]  Doc. 13, Amended Complaint, Count III, p. 11.

considered in a retaliation claim. Taking Plaintiff's allegations as true, the Court finds that there is not one scintilla of an accusation that Deputy Christ used any type of force against Plaintiff, Plaintiff's allegations do not give rise to a retaliation claim or excessive force, and there was no unlawful detention.

*Seizure by Deputy Christ*

Plaintiff alleges that he was unlawfully seized and/or that he was detained based on fabricated pretexts. Plaintiff appears to indicate that a seizure occurred when Deputy Christ instructed Plaintiff to leave the area and subsequently instructed him to "hold on" while Deputy Christ inspected his license plate and verified the suspension of his license. Plaintiff has failed to establish that the alleged detention was motivated by Plaintiff's cumulative exercise of First Amendments rights as suggested by Plaintiff.  The Court finds that the facts alleged by Plaintiff do not rise to the level of a seizure.

*Excessive force*

Plaintiff alleges that he was subjected to excessive force.  However, Plaintiff has failed to allege any physical contact between Deputy Christ and Plaintiff.  Claims "that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen" are "analyzed under the Fourth Amendment and its 'reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865 (1989). "To prevail on an excessive force claim, a plaintiff must show: (1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Tarver v. City of Edna*, 410

F.3d 745, 751 (5th Cir. 2005). The Court finds that Plaintiff's claims of excessive force are clearly without merit.

*Due process claim*

Plaintiff alleges that his due process rights were violated because he was given a contradictory order—first, to leave the area, and then to "hold up."

To state a plausible substantive due process claim, Plaintiff must establish that the Defendants' conduct "shocked the conscience in a constitutional sense." *Sterling v. City of Jackson, Mississippi*, 159 F.4th 361, 377 (5th Cir. 2025) (cleaned up). Section 1983 complaints must embrace more than a generic, amorphous claim of due process violations. *Dismukes v. Hackathorn*, 802 F.Supp. 1442, 1445 (S.D.Ms. 1992) (cleaned up). Vague, nebulous due process claims are too broad, given the complexities inherent in the due process clause of the Fourteenth Amendment, from which three distinct constitutional protections originate. *Id.* (cleaned up).

Substantive due process is violated by state conduct that "shocks the conscience," or constitutes force that is "brutal." *Rochin v. California*, 342 U.S. 165, 172-73, 72 S.Ct. 205 (1952). To determine whether a substantive due process violation existed in the context of § 1983, the Fifth Circuit subsequently developed a test around the *Johnson* factors in *Shillingford v. Holmes*, 634 F.2d 263, 265 (5th Cir. 1981). Tailored to fit the Fourteenth Amendment's concept of substantive due process, the *Shillingford* test considered whether the "state officer's action [1] caused severe injuries, [2] was grossly disproportionate to the need for action under the circumstances and [3] was inspired by malice rather than merely careless or unwise excess of zeal so that it amounted to an abuse of power that shocks the

conscience." None of the *Johnson* factors are met based on the alleged facts asserted by Plaintiff. The Court finds that Plaintiff's claim of a violation of due process is completely without merit.

*Civil conspiracy*

Plaintiff alleges a civil conspiracy between him and Defendants that is internal to the Vernon Parish Sheriff's Office. To prove a Section 1983 claim for conspiracy, a plaintiff must show: 1) the existence of a conspiracy involving state action; and 2) "a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy." *Shaw v. Villanueva*, 918 F.3d 414, 419 (5th Cir. 2019).

"Plaintiffs who assert conspiracy claims under civil rights statutes must plead the operative facts upon which their claim is based. Bald allegations that a conspiracy existed are insufficient." *Lynch v. Cannatella*, 810 F.2d 1363, 1369-70 (5th Cir. 1987). To avoid dismissal, a plaintiff first must show "an actual violation of section 1983." *Hale v. Townley*, 45 F.3d 914, 920 (5th Cir. 1995). A plaintiff cannot establish that a conspiracy occurred by merely alleging it happened through conclusory allegations with no factual support. *Hicks v. Bexar Cnty., Tex.*, 973 F.Supp. 653, 676 (W.D. Tex. 1997). Allegations of conspiracy without facts demonstrating a prior agreement between defendants cannot survive a motion to dismiss. *See Hey v. Irving*, 161 F.3d 7, *3 (5th Cir. 1998) (per curiam) (holding that "plaintiffs' bare conclusory allegation that '[a]ll three defendants demonstrated a meeting of the mind' absent any specific facts showing that the defendants reached an agreement to violate their rights, is not sufficient to plead a § 1983 conspiracy") (citing *Arsenaux v.*

*Roberts*, 726 F.2d 1022, 1023-24 (5th Cir.1982)). Additionally, a plaintiff "must show that the defendants agreed to commit an illegal act." *Arsenaux*, 726 F.2d at 1022-24.

As a matter of law, a conspiracy requires two or more persons or entities. *Boyd v. Calcasieu Parish Sheriff's Office*, Civil Action No. 2013 WL 1857448, at \*5 (W.D. La. May 2, 2013) (cleaned up). The intracorporate conspiracy doctrine provides that a corporation cannot conspire with itself through its agents or employees when the acts of the agents or employees are within the scope of their employment. *Id.* The intracorporate conspiracy doctrine also applies to government entities like VPSO. *Id.* (citing *Hilliard v. Ferguson*, 30 F.3d 649, 652–53 (5th Cir.1994)).

It appears that Plaintiff is alleging that Deputy Christ, Sheriff Craft, and Chief Turner "acted in concert" to "deny Plaintiff equal protection." Defendants argue that any alleged conspiratorial actions between members of the VPSO is barred under the aforementioned doctrine. The Court agrees and finds that Plaintiff's allegations are vague and completely lacking in facts to establish any type of conspiracy, let alone a civil conspiracy, which is barred by the intracorporate conspiracy doctrine.

*Equal protection*

Plaintiff's equal protection claim appears to involve his allegations that he was "targeted due to personal animus." An equal protection claim requires the plaintiff to "show that (1) he or she was intentionally treated differently from others similarly situated and (2) there was no rational basis for the difference in treatment." *Lindquist v. City of Pasadena*, 669 F.3d 225, 233 (5th Cir. 2012) (citing *Village of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S.Ct. 1073 (2000)).

Here, as noted by Defendants, Plaintiff has failed to allege that he was treated differently from others that are similarly situated.  Thus, the Court finds that Plaintiff has failed to establish an equal protection claim.

*Monell*

Plaintiff alleges that Sheriff Craft has a "policy of impunity" based on his alleged failure to conduct internal investigations of VPSO employees, relying on *Monell v. Dep't of Soc. Servs. Of City of New York*, 436 U.S. 658, 98 S. Ct. 2018 (1978). In *Monell*, the Supreme Court reasoned that an official policy could be shown through written policy statements, ordinances, or regulations; a widespread practice that is so common and well-settled as to constitute a custom that represents municipal policy; or a single act conducted by an official or entity with final policymaking authority. *Sweetin v. City of Texas City, Texas*, 48 F.4th 387, 392 (5th Cir. 2022).

In order for a practice to be designated as a custom, it must have occurred for so long or so frequently that "the course of conduct warrants attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice" of municipal employees. *Martinez v. Nueces Cnty., Texas*, 71 F.4th 385, 389 (5th Cir. 2023) (quoting *Peterson v. City of Fort Worth*, 588 F.2d 838, 850-51 (5th Cir. 2009)). However, "[i]solated violations are not the persistent, often repeated constant violations that constitute custom and policy" as required for municipal Section 1983 liability. *Bennett v. City of Slidell*, 728 F.2d 762, 768 n.3 (5th Cir. 1984), *cert. denied*, 472 U.S. 1016 (1985).

A governmental unit cannot be held liable for the acts of its employees solely on a theory of respondeat superior. *Valle v. City of Houston*, 613 F.3d 536, 541 (5th Cir. 2010).

Rather, to state a claim against a sheriff under *Monell* and its progeny, a plaintiff must plead that (1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Gomez v. Galman*, 18 F.4th 769, 777 (5th Cir. 2021) (cleaned up).

Here, Plaintiff has failed to show that there was an official policy promulgated by the municipal policymaker that was the moving force behind the violation of a constitutional right. Plaintiff has failed to allege that any actions he complains of were taken pursuant to Sheriff Craft's official policy. The sole comment by Calvin Turner— "we do not investigate our own," taken as true, does not indicate a pattern or custom, but only an single isolated comment.

Additionally, Plaintiff's allegations do not establish that Calvin Turner of Sheriff Craft ratified Deputy Christ's alleged conduct. "Even when an official with final policymaking authority does not directly act to set a policy, a municipality may be liable *in extreme factual situations* when that official ratifies a subordinate's decision, which requires more than the defense of a decision or action shown to be unconstitutional after the fact." *Webb v. Town of St. Joseph*, 925 F.3d 209, 217 (5th Cir. 2019) (*see also Davidson v. City of Stafford, Tex.,* 848 F.3d 384, 395 (5th Cir. 2017) (noting that ratification "is limited to 'extreme factual situations'"); *World Wide St. Preachers Fellowship v. Town of Columbia,* 591 F.3d 747, 755 (5th Cir. 2009) (same).

Likewise, Plaintiff's allegation that Calvin Turner failed to investigate Deputy Christ in response to Plaintiff's complaint "does not show that [the sheriff] knew of and approved the [allegedly] illegal character" of Deputy Christ's alleged actions. *Milam v.*

*City of San Antonio*, 113 Fed.App'x 622, 628 (5th Cir. 2004); *see also Medina v. Ortiz*, 623 Fed.App'x 695, 701 (5th Cir. 2015) (rejecting ratification theory where sheriff accepted officer's use of force report, refused to turn over evidence until suit was filed, and defendant officer's actions); *Peterson*, 588 F.3d at 848 (refusing to find ratification based on "a policymaker who defends conduct that is later shown to be unlawful."). And as the Fifth Circuit explained in *Peterson*, "it is hard to see how a policymaker's ineffectual or nonexistent response to an incident, which occurs well *after* the fact of the constitutional deprivation, could have *caused* the deprivation." *Id*.

To be sure, Plaintiff's *Monell* claims fail because "isolated events" do not evince "the persistent, often repeated constant violations that constitute custom and policy as required for municipal section 1983 liability." *Gates v. Texas Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 437 (5th Cir.2008) (quoting *Campbell v. City of San Antonio*, 43 F.3d 973, 977 (5th Cir.1995)); *see Burge v. Tammany Parish*, 336 F.3d 363, 370 (5th Cir.2003).

*Qualified immunity*

Defendants argue that they are entitled to qualified immunity, noting that Plaintiff has sued each of these Defendants in their individual capacities. A state official can be sued in his individual capacity and held personally liable under § 1983 if a plaintiff can show the official, acting under state law, caused the deprivation of a federal right. *Hafer v. Melo*, 502 U.S. 21, 25, 112 S.Ct. 358 (1991). Per the United States Fifth Circuit Court of Appeals, "[t]his standard requires more than conclusional assertions. The plaintiff must allege specific acts giving rise to a constitutional violation." *Oliver v. Scott*, 276 F.3d 736, 741

(5th Cir. 2002). As a defense to § 1983 claims, government officials may invoke qualified immunity, which shields government officials performing discretionary functions from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Club Retro, LLC v. Hilton*, 568 F.3d 181, 184 (5th Cir. 2009).

The Supreme Court emphasized that qualified immunity functions as immunity from suit, rather than a mere defense to liability. *Pearson v. Callahan*, 555 U.S. 223, 237, 129 S.Ct. 808, 818 (2009). "[T]he qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Malley v. Briggs*, 475 U.S. 335, 344-45, 106 S.Ct. 1092, 1097-98 (1986); *Mendenhall v. Riser*, 213 F.3d 226, 230 (5th Cir. 2000). "This means that even law enforcement officials who reasonably but mistakenly commit a constitutional violation are entitled to immunity." *Bazan v. Hidalgo County*, 246 F.3d 481, 488 (5th Cir. 2001) (quoting *Glenn v. City of Tyler,* 242 F.3d. 307, 312 (5th Cir. 2001)).

Once the government official asserts qualified immunity, the burden shifts to the plaintiff to negate the defense. *Collier v. Montgomery*, 569 F.3d. 214, 217 (5th Cir. 2009). To overcome a claim of qualified immunity, a plaintiff must demonstrate: 1) that the official violated a statutory or constitutional right; and 2) that the right was "clearly established" at the time of the challenged conduct. *Ashcroft v. al-Kidd*, 563 U.S. 731, 735, 131 S.Ct. 2074, 2080 (2011); *Club Retro, LLC*, 569 F.3d at 194. Per the Fifth Circuit, a constitutional right is "clearly established" when the contours of the right are "sufficiently clear that a reasonable official would understand that what he is doing violates that right."

*Thompson v. Upshur County, TX*, 245 F.3d 447, 457 (5th Cir. 2001) (quoting *Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987).

Defendants, Sheriff Craft and Calvin Turner argue that they are entitled to qualified immunity because Plaintiff has not alleged that they participated in any particular type of behavior.

Personal involvement is an essential aspect of a section 1983 cause of action. *See Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983) ("Personal involvement is an essential element of a civil rights cause of action.") (citing *Rizzo v. Goode*, 423 U.S. 362, 371-72 (1976) (must be an affirmative link between injury and conduct of defendant)). The Fifth Circuit has held that a plaintiff must specify the personal involvement of each defendant in a section 1983 proceeding and "cannot make generalized allegations, nor can he support a claim based on any vicarious liability theory." *See Murphy v. Kellar,* 950 F.2d 290, 292 n.7 (5th Cir. 1992). The Court agrees and finds that Sheriff Craft and Calvin Turner are entitled to qualified immunity.

Defendant, Deputy Christ argues that he is entitled to qualified immunity because Plaintiff has failed to articulate a constitutional violation by Deputy Christ that was "clearly established" at the time of the challenged conduct. Plaintiff argues that his right to record the traffic stop and be free from seizure without reasonable suspicion are the constitutional violations that Deputy Christ violated. First, there was no seizure, thus no constitutional violation. As to his right to record, Plaintiff alleges that he was compliant and left the traffic stop area the first time of his own accord.

The Court finds that Deputy Christ is also entitled to qualified immunity. Plaintiff has failed to establish that his First Amendment rights were limited by Deputy Christ, and he has failed to establish that he suffered an actual injury. Therefore, all claims brought against these Defendant, Craft, Turner, and Christ, in their individual capacities will be dismissed.

*State law*

Plaintiff has alleged state law claims for aggravated assault, public intimidation, malfeasance, IIED, and abuse of process. Plaintiff does not assert who committed these acts of alleged misconduct. Be that as it may, Louisiana courts do not recognize grounds for civil liability from a criminal statute unless the Legislature expressly enacts such a cause of action. *See Gugliuzza v. K.C.M.C., Inc.,* 606 So.2d 790, 793 (La. 1992) *and Laird v. Travelers Ins. Co.,* 263 La. 199, 267 So.2d 714, 717 (La. 1972). Plaintiff has not shown that such a legislative enactment exists relative to his claims of aggravated assault, public intimidation, and malfeasance. As such, Plaintiff's state law claims of aggravated assault, public intimidation and malfeasance will be dismissed.

As to Plaintiff's claim of intentional infliction of emotional distress ("IIED"), under Louisiana law, in order to recover for intentional infliction of emotional distress, a plaintiff is required to establish three elements: "(1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct." *White v. Monsanto Co.*, 585 So.2d 1205, 1209 (La. 1991).

Defendants contend that Plaintiff has not pled any allegations showing that any of Defendants' alleged actions were "extreme and outrageous," that Plaintiff suffered severe emotional distress, or that any Defendant desired to inflict severe emotional distress which was certain or substantially certain to result. The Court agrees and will dismiss this claim.

As to Plaintiff's abuse of process claim, Defendants argue that Plaintiff has failed to comply with Federal Rule of Civil Procedure 8, which requires a short and plain statement of the claim showing that the pleader is entitled to relief. *Twombly*, 550 U.S. at 545.

The tort of abuse of process involves the misuse of a process whereby a party attempts to obtain some result not proper under law. *No Drama, LLC v. Caluda*, 177 So.3d 747, 751 (La. App. 5 Cir. 10/14/15); *Stark v. Eunice Superette, Inc.*, 457 So.2d 291 (La. App. 3 Cir.1984). An abuse of process claim has two essential elements: (1) the existence of an ulterior purpose, and (2) a willful act in the use of the process not proper in the regular prosecution of the proceeding. *No Drama, LLC*, 177 So.3d at 751. In other words, generally, Plaintiffs must demonstrate that the Defendant employed a legal process for an improper reason and with an ulterior purpose or motive. *Palowsky v. Campbell,* 22-592 (La. App. 5 Cir. 12/14/23), 378 So.3d 226 *(citing Mini–Togs,Inc. v. Young,* 354 So.2d 1389 (La. App. 2 Cir.1978)).

In order to set forth a cause of action for abuse of process, a plaintiff must allege irregularity in the process itself. *Delcambre v. Mancuso*, 2018-833, (La.App. 3 Cir. 4/10/19), 268 So.3d 325, 331. More specifically, an abuse of process occurs when the actor employs a legal process in a manner that although technically correct, is for a wrongful and

malicious purpose to obtain an unjustifiable end or an object that it was not the purpose of the particular process employed to effect. *Id.*, 2018-833 at p. 8, 268 So.3d at 331. The tort involves the misuse of a process already legally issued whereby a party attempts to obtain a result not proper under the law; at issue in such actions is the intent to use a legal process for an improper reason. *Goldstein v. Serio*, 496 So.2d 412, 415 (La.App. 4 Cir. 1986). Therefore, if the process is used to redress a legal wrong, the person who invoked the legal process cannot be said to have committed any tort, regardless of whether his motive was vicious or vindictive; on the other hand, when the person who invoked the legal process seeks by the use of such process to attain some collateral objective, outside the scope of the operation of the process employed, a tort arises. *Hebert v. Louisiana Licensed Prof'L Vocational Rehabilitation Counselors*, 2007-610, p. 9 (La.App. 3 Cir. 3/4/09), 4 So.3d 1002, 1009, *writ denied*, 2009-0750 (La. 5/22/09), 9 So.3d 144, *and writ denied*, 2009-0753 (La. 5/22/09), 9 So.3d 144; *See also Waguespack*, 99-2016 at p. 6, 768 So.2d at 291 ("A legal and legitimate use of process, to effect the result which such process is designed by law to accomplish, is not an abuse thereof. Regular use of process cannot constitute abuse, even though the user was actuated by a wrongful motive, purpose, or intent, or by malice.").

Finally, the acts alleged to constitute the abuse or perversion of the process must result in damage. *Mini-Togs, Inc.*, 354 So.2d at 1391 (citing *Italian Star Line v. U.S. Shipping Bd. Emergency Fleet Corp.*, 53 F.2d 359, 362 (2d Cir. 1931)).

Defendants contend that Deputy Christ has a legal right to approach Plaintiff and inquire into his activities, and furthermore Plaintiff has failed to assert that he is entitled to

relief. *Twombly*, 550 U.S. at 545. The Court agrees and finds that Plaintiff has failed to state a claim for abuse of process.

Summarizing, the Court finds that Plaintiff's state law claim for aggravated assault, public intimidation, malfeasance, IIED, and abuse of process are without merit for the reasons explained herein and will be dismissed.

*Injunctive relief*

Plaintiff seeks injunctive relief by way of "[a]n Order appointing a Federal Monitor to oversee the VPSO Internal Affairs division and Use of Force reporting" and "[p]ermanently enjoining Deputy Chuck Christ from initiating any conduct, traffic stop, or detention of Plaintiff without a warrant."

The Fifth Circuit has explained that "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief"; "that a claim for injunctive relief must have its own Article III footing, separate from the past injury that supports claims for retrospective relief"; and that, "to obtain injunctive relief, the plaintiff must establish a real and immediate threat that he w[ill] again suffer similar injury in the future" and that, "[a]bsent such a showing, there is no case or controversy regarding prospective relief, and thus no basis in Article III for the court's power to issue an injunction." *In re Stewart*, 647 F.3d 553, 557 (5th Cir. 2011) (cleaned up). "Although past wrongs may help establish the threat of a future injury, they are insufficient alone." *Arkansas Project v. Shaw*, 775 F.3d 641, 648 (5th Cir. 2014).

To receive injunctive relief, Plaintiff must show: "(1) there is a substantial likelihood that the movant will prevail on the merits; (2) there is a substantial threat that

irreparable harm will result if the injunction is not granted; (3) the threatened injury outweighs the threatened harm to the defendant; and (4) the granting of the injunction will not disserve the public interest." *Vazquez Barrera v. Wolf*, 455 F.Supp.3d 330, 335 (5th Cir. 2020) (cleaned up).

To receive a permanent injunction, a plaintiff must first establish success on the merits and then meet a four-part test showing that: (1) it has suffered an irreparable injury; (2) remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) considering the balance of the hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) the public interest would not be disserved by a permanent injunction. *eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 390, 126 S.Ct. 1837 (2006).

As to Plaintiff's request for a injunctive relief, whether temporary  or preliminary, Plaintiff has failed to show a real and immediate threat that he will suffer similar injury in the future, thus this Court has no power to issue an injunction.  "Although past wrongs may help establish the threat of a future injury, they are insufficient alone." *Arkansas Project v. Shaw*, 775 F.3d 641, 648 (5th Cir. 2014).  As to Plaintiff's request for the permanent injunction, Plaintiff has failed to establish that he would succeed on the merits, nor has he shown that he has suffered an irreparable injury. Thus, Plaintiff has failed to establish the requisite elements for this Court to issue a  temporary or permanent injunction.

Additionally, Plaintiff has failed to establish an irreparable injury and/or that there are no available remedies at law.  Finally, Plaintiff has failed to establish that a remedy in equity is warranted based on the balance of the hardship between Plaintiff and Defendants,

nor has Plaintiff established that the public interest would not be disserved by a permanent injunction.

Concerning Plaintiff's request for the appointment of a federal monitor to oversee the VPSO internal affairs division, such requested relief extends further than necessary to correct the alleged violation of Plaintiff's rights.  Plaintiff's request to permanently enjoin Deputy Chuck Christ from initiating any contact, traffic stop, or detention of Plaintiff without a warrant is unrealistic and untenable. As such, Plaintiff's request for injunctive relief will be denied.

*Declaratory relief*

Plaintiff is seeking a declaratory judgment that the VPSO's alleged "no investigation" policy is unconstitutional. Defendants argue that Plaintiff has not shown that the VPSO has repeated constant violations, which constitute a custom or practice, nor has Plaintiff shown that he is entitled to have an internal investigation conducted into the sheriff's office employees.  The Court agrees with Defendant and will deny Plaintiff's request.

*Failure to train and/or supervise*

In his opposition, Plaintiff contends that Sheriff Craft failed to train or supervise under a theory of supervisory liability in a manner which constitutes deliberate indifference. "The deliberate indifference standard is a high one." *Doe v. Ferguson,* 128 F.4th 727, 735 (5th Cir. 2025) (cleaned up). And, to act with deliberate indifference, "a state actor must know of and disregard an excessive risk to the

victim's health or safety." *Id.* (cleaned up). "The state actor's actual knowledge is critical to the inquiry—a failure to alleviate a significant risk he should have perceived but did not…does not rise to the level of deliberate indifference." *Id.* (cleaned up). To demonstrate deliberate indifference under claims of supervisory liability for a failure to train or supervise, Plaintiff must show that: (1) the supervisor either failed to supervise or train the subordinate official, (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference. *Landor v. Louisiana Dep't of Corr. And Pub. Safety,* 21-733-SDD-SDJ, 2022 WL 4593085, at *2 (M.D. La. Sept. 29, 2022) (citing *Brauner v. Coody,* 793 F.3d 493, 501 (5th Cir. 2015)).

Supervisory liability for failure to train or supervise allegations cannot be conclusory; conclusory allegations "are insufficient to set out a constitutional claim." *Id.* (citing *Roberts v. City of Shreveport*, 397 F.3d 287, 292 (5th Cir. 2005)). Crucially, "[p]roof of more than a single instance of the lack of training or supervision causing a violation of constitutional rights is normally required before such lack of training or supervision constitutes deliberate indifference." *Id.* (citing *Thompson v. Upshur County*, 245 F.3d 447, 459 (5th Cir. 2010)); *see also Snyder v. Trepangnier*, 142 F.3d 791, 798-99 (5th Cir. 1998) (generally requiring that a plaintiff demonstrate at least a pattern of similar violations).

Here, Plaintiff did not plead this claim in his complaint, and taking the facts as true, he has failed to establish that Sheriff Craft failed to supervise or train Deputy Christ. Additionally, Plaintiff has failed to show any causal link between a failure to train and/or supervise, or that said failure amounts to deliberate indifference.

## <u>CONCLUSION</u>

For the reasons explained herein, the Motion to Dismiss Pursuant to Fed. R. of Civ. P. 12(b)(6) for Failure to State a Claim (Doc. 29) will be **GRANTED** in its entirety, dismissing all of Plaintiff's claims with prejudice.

**THUS DONE AND SIGNED** in chambers on this 5th day of March, 2026.

**JAMES. D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**