RECEIVED
U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA

APR 0 2 2026

BY:_____ DANIEL J. McCOY, CLERK

IN THE UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION


HUGH BRIAN STREET,

Plaintiff,


v.


DEPUTY CHUCK CHRIST, ET AL.,

Defendants.


CASE NO.: 2:25-CV-01882

JUDGE JAMES D. CAIN, JR.

MAGISTRATE JUDGE LEBLANC

---

MEMORANDUM IN SUPPORT OF PLAINTIFF'S RULE 59(e) MOTION TO ALTER OR

AMEND THE JUDGMENT

---

## I. INTRODUCTION

A motion under Rule 59(e) is the proper vehicle to correct a manifest error of law or fact.

*Templet v. HydroChem Inc.*, 367 F.3d 473, 478–79 (5th Cir. 2004). The Fifth Circuit defines

a manifest error of law as the "wholesale disregard, misapplication, or failure to recognize

controlling precedent." *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004).


This motion is strictly confined to correcting the Court's wholesale misapplication of the Rule

12(b)(6) standard and its failure to recognize controlling Supreme Court precedent in its

Memorandum Ruling (Doc. 36)—specifically, the application of unlawful evidentiary

burdens, the impermissible resolution of factual disputes in favor of the defense, and the silent bypass of mandatory procedural safeguards for pro se litigants. Because these errors appear on the face of the ruling and directly contradict binding precedent, Rule 59(e) relief is necessary.

## II. IMPERMISSIBLE FACT-FINDING AND RESOLUTION OF DISPUTES

The bedrock of Rule 12(b)(6) is the absolute requirement to accept well-pleaded facts as true. *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009). The Court repeatedly departed from this role, impermissibly substituting Plaintiff's explicitly pled facts with sanitized narratives favorable to the defense.

**1. Factual Omission of Coercion to Defeat the Seizure Claim:** The Court expressly acknowledged Plaintiff's allegation that the Deputy ordered him to leave "or risk going to jail" (Doc. 36 at 1). However, the Court procedurally recharacterized the encounter during its legal analysis, repeatedly ruling that Plaintiff left "of his own accord" (Doc. 36 at 14) or "chose to leave" (Doc. 36 at 2). Under the Supreme Court's mandate in *California v. Hodari D.*, 499 U.S. 621 (1991), yielding to an ultimatum of arrest constitutes a "submission to a show of authority," not a voluntary departure (Doc. 13 ¶¶ 26, 29; Doc. 32 at 7). By framing coerced compliance under the threat of incarceration as a voluntary action, the Court impermissibly resolved a factual dispute in favor of the defense to conclude "there was no seizure, thus no constitutional violation" (Doc. 36 at 14).

**2. Factual Omission of the Threat of Lethal Force and Excessive Force:** The Court dismissed Plaintiff's excessive force claims by erroneously requiring "physical contact" (Doc.

36 at 6) and severely truncating the encounter, omitting the most severe constitutional deprivation entirely. Specifically, the Court omitted the explicitly pled fact that during the second encounter, while Plaintiff was standing at a lawful distance of 50+ yards, the Deputy deliberately executed an unconstitutional "show of authority" by grabbing his service weapon while staring Plaintiff down (Doc. 13 ¶¶ 39–40). Under the Fourth Amendment, a deliberate gesture toward a service weapon against a non-threatening, distant bystander constitutes an objective threat of lethal force (Doc. 13 ¶¶ 33–34, 36, 39; Doc. 32 at 18–19). By omitting this explicitly pled physical threat, the Court impermissibly acted as a fact-finder to conclude "Plaintiff's claims of excessive force are clearly without merit" (Doc. 36 at 6–7).

**3. Omission of Evidentiary Context and the Explicit Retaliatory Quote to Establish "Attenuation":** To dismiss the First Amendment retaliation claim, the Court concluded the 12-year history of hostility was "too attenuated" to establish a retaliatory motive (Doc. 36 at 5). In doing so, the Court committed a manifest error of law by failing to recognize that this history was explicitly pled as evidentiary context to establish motive for the current deprivation, not as a standalone, time-barred claim (Doc. 13, § A at 3; Doc. 32, § F at 20–22). Furthermore, the Court completely omitted the Deputy's explicitly pled, contemporaneous quote directly connecting that past history to the present detention: "I done been through this shit with you before, Brian." This specific verbal admission acts as a direct temporal bridge, legally destroying any claim of attenuation (Doc. 13 ¶ 35; Doc. 32 at 9, 21). By excluding the literal words spoken by the Deputy at the scene, the Court impermissibly weighed the evidence to sever the retaliatory nexus.

**4. Application of an Unlawful Standard for First Amendment "Actual Injury":** To dismiss the First Amendment claims, the Court impermissibly resolved the factual dispute

regarding damages by concluding Plaintiff suffered no actual injury and that his rights were not "limited" because he allegedly left "of his own accord" (Doc. 36 at 14–15). In doing so, the Court actively omitted Plaintiff's explicitly pled, verified psychological injuries—specifically, the severe emotional distress, fear of violence, and "chilled speech" caused by the Deputy's physical threat with a service weapon (Doc. 13 ¶¶ 33, 39). Furthermore, the Court committed a manifest error of law by ignoring the "chilling effect" standard. The Fifth Circuit clearly establishes in Keenan v. Tejeda, 290 F.3d 252 (5th Cir. 2002) that an actionable First Amendment injury occurs if a person of "ordinary firmness" would be chilled by the police misconduct, regardless of the Plaintiff's subjective resilience or whether they ultimately left the scene (Doc. 13 ¶ 34, Prayer for Relief C; Doc. 32, § B at 8–9). By weighing the extent of the psychological injury at the pleading stage, the Court violated the Rule 12(b)(6) standard.

**5. Factual Omission of Explicitly Pled Equal Protection Comparators:** In dismissing the action, the Court actively ignored the explicitly pled comparators demonstrating disparate treatment at both the roadside and administrative levels (Doc. 36 at 10). Specifically, the Court omitted the fact that Plaintiff, a completely lawful bystander, was subjected to extreme hostility and threats of arrest, while the actual detained motorist—the physical subject of the police investigation—was not. Furthermore, the Court omitted Chief Turner's explicitly pled administrative comparator, admitting the department applies a different legal standard to the general public than it does to "our own" (Doc. 13 ¶¶ 25, 44; Doc. 32 at 15; Doc. 32, § H at 23–24). The Court failed to recognize the legal nuance that a bystander cannot plausibly be subjected to harsher police control than a primary suspect, nor can a department openly operate two separate systems of justice. By simply refusing to acknowledge these pled facts,

the Court impermissibly resolved the Equal Protection "Class of One" claim established in

*Village of Willowbrook v. Olech*, 528 U.S. 562 (2000).

## III. OMISSION OF DIRECT SUPERVISORY PARTICIPATION & MONELL CUSTOMS

To grant Qualified Immunity to the administrative defendants and dismiss the Monell claims, the Court broadly concluded that neither Sheriff Craft nor Chief Turner were "alleged to have participated in any particular type of behavior" (Doc. 36 at 14), and downgraded their policy directives into a "single isolated comment" (Doc. 36 at 11). This represents a manifest error of fact.

**6. Factual Omission of the Sheriff's Personal Participation and Deliberate Indifference:** The Court omitted explicitly pled facts establishing the Sheriff personally participated through: (1) Willful Blindness: Personally refusing to view Plaintiff's video evidence of the assault during an in-person meeting on November 21, 2025; (2) Personal Animus: Demonstrating active hostility by mocking the process server regarding his relationship to the Plaintiff; (3) Ratification via Failure to Meaningfully Investigate: Failing to contact Plaintiff to obtain his statement or objective video evidence despite receiving actual, verified notice of the constitutional violations; (4) Maintenance of Policies of Impunity and Spoliation: Personally maintaining the administrative custom of deputy impunity and the "10-Day Deletion" policy; (5) Constructive Notice & Failure to Discipline: Retaining the Deputy despite formal 2012 and 2013 requests; and (6) Final Policymaker Ratification & Disparate Treatment: Personally authoring the January 6, 2026 public policy statement vowing to blindly "defend" employees. The Court failed to recognize the established legal principle that

under § 1983, supervisory liability does not require physical presence at the scene; it is firmly established through ratification, willful blindness, and the active maintenance of unconstitutional customs (Doc. 13 ¶ 43; Doc. 32 at 10–12, 16–18; Exhibit F). By ignoring these six pled administrative actions, the Court impermissibly acted as a fact-finder to grant immunity.

**7. Factual Omission of Chief Turner's Direct Supervisory Participation:** The Court omitted explicitly pled facts establishing that Chief Turner personally participated through: (1) Contemporaneous Supervisory Knowledge: Remaining on an active phone call with Deputy Christ during the second encounter while the Deputy executed a physical "show of authority"; (2) Actual Knowledge via Viewing Evidence: Personally viewing the objective video evidence of the Deputy's misconduct; (3) Active Obstruction of the Right to Petition: Personally refusing to accept a formal citizen's criminal complaint immediately after viewing the evidence; (4) Discriminatory Denial of Protection (Equal Protection): Enforcing class-based discrimination by explicitly stating "We do not investigate our own"; and (5) Admission of the 10-Day Auto-Delete Policy (Spoliation Threat): Explicitly admitting that the administrative "10-Day Auto-Delete" policy applied to the building security video. Under well-settled law, a supervisor's contemporaneous knowledge of an ongoing violation, coupled with the active administrative obstruction of a citizen's right to petition, constitutes direct, actionable participation (Doc. 13 ¶¶ 40, 44–45; Doc. 32 at 14–16; Exhibit E). By omitting these five distinct acts, the Court impermissibly shielded the supervisor from liability.

## IV. UNLAWFUL APPLICATION OF HEIGHTENED EVIDENTIARY STANDARDS

A primary manifest error of law is the Court's application of a heightened, trial-level evidentiary burden at the pleading stage, an act strictly prohibited by the Supreme Court in *Leatherman v. Tarrant Cnty.*, 507 U.S. 163 (1993).

**8. Conflating Pleading Standards with Evidentiary Burdens:** To dismiss the failure to train/supervise claims, the Court explicitly imported a summary judgment evidentiary standard into the 12(b)(6) analysis, quoting *Thompson v. Upshur County*, 245 F.3d 447, 459 (5th Cir. 2010) to demand that: "Crucially, '[p]roof of more than a single instance... is normally required'" (Doc. 36 at 21). By demanding 'proof' rather than 'plausible allegations,' the Court unlawfully applied a Rule 56 Summary Judgment burden to a Rule 12(b)(6) motion, creating an impossible procedural paradox that circumvents the discovery process (Doc. 32 at 6). This conflation of what must eventually be proved at trial with what must merely be alleged at the pleading stage violates Rule 8(a).

**9. Demanding "Success on the Merits" Prior to Discovery:** The Court dismissed Plaintiff's request for equitable relief by demanding that Plaintiff definitively "establish that he would succeed on the merits" (Doc. 36 at 19) prior to the exchange of a single document in discovery. Requiring a plaintiff to definitively prove ultimate success on the merits before the defense has produced a single piece of evidence fundamentally violates the Federal Rules of Civil Procedure (Doc. 32 at 24). By demanding post-trial certainty to survive a motion to dismiss, the Court committed a manifest error of law.

**V. STATE LAW CLAIMS AND PROCEDURAL SAFEGUARDS**

**10. Factual Omission of the Basis and Actors for State Law Claims:** The Court dismissed the state law claims by erroneously concluding "Plaintiff does not assert who committed these acts" and by arguing criminal statutes do not provide civil grounds (Doc. 36 at 15). In doing so, the Court entirely omitted the Opposition brief, which explicitly named the actors for each tort and expressly clarified that the claims were brought as actionable civil "Fault" under La. Civ. Code art. 2315(A). Furthermore, the Court failed to recognize the foundational principle of Louisiana law that criminal statutes frequently establish the standard of care for actionable civil fault (Doc. 32 at 18–20).

**11. Silent Denial of Leave to Amend for a Pro Se Litigant:** The Court explicitly recognized Plaintiff's Pro Se status on the docket. However, when dismissing the civil rights claims as "conclusory" (Doc. 36 at 21) with prejudice (Doc. 36 at 22), the Court bypassed the mandatory Fifth Circuit directive and Supreme Court precedent, *Erickson v. Pardus*, 551 U.S. 89 (2007), which dictate that a court must offer a pro se civil rights litigant at least one opportunity to amend before permanently closing the case. Under binding precedent, terminating a pro se civil rights claim with prejudice without providing an opportunity to amend—or formally declaring that amendment would be futile—is a reversible abuse of discretion (Doc. 32 at 6, 25). The Court further bypassed Plaintiff's explicit request for Leave to Amend (Doc. 32 at 25), violating *Foman v. Davis*, 371 U.S. 178 (1962), by executing a dismissal with prejudice without providing the legally mandated justification.

## VI. CONCLUSION

Because the Memorandum Ruling relied upon heightened evidentiary demands, impermissible fact-weighing, and the silent bypass of Rule 15 safeguards, the resulting

judgment is procedurally invalid. Plaintiff respectfully requests that the Court GRANT this Rule 59(e) Motion, VACATE the Judgment and Memorandum Ruling (Doc. 36), and either reopen the case for discovery or formally grant Plaintiff's motion for Leave to Amend the Complaint.

Respectfully submitted,

_____

Hugh Brian Street, Plaintiff Pro Se

385 RC Stephens Rd

Leesville, LA 71446

Phone: 337-404-6465

Email: brian.street@southerntreeninjas.com

CERTIFICATE OF RULE 7.4.1 CONFERENCE

I hereby certify that on March 30th 2026, I attempted to confer with counsel for the Defendants, Mr. Wixom, via email regarding the relief sought in this Rule 59(e) Motion in a good faith effort to resolve the issues amicably. As of the time of filing, opposing counsel has not responded to my correspondence. Therefore, it is presumed that the Defendants oppose this motion.

_____

Hugh Brian Street, Plaintiff Pro Se