RECEIVED
U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA

APR 2 1 2026

DANIEL J. McCOY, CLERK
BY:_____A.S_____

IN THE UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION


HUGH BRIAN STREET,

Plaintiff,


v.


DEPUTY CHUCK CHRIST, ET AL.,

Defendants.


CASE NO.: 2:25-CV-01882

JUDGE JAMES D. CAIN, JR.

MAGISTRATE JUDGE LEBLANC

---

PLAINTIFF'S REPLY TO DEFENDANTS' OPPOSITION TO RULE 59(e) MOTION

---

## I. INTRODUCTION

Defendants' Opposition (Doc. 40) misunderstands Plaintiff's Rule 59(e) Motion. Plaintiff does not merely disagree with the Court's conclusion or attempt to introduce new evidence. Rather, this motion establishes the Court committed a manifest error of law by misapplying the Rule 12(b)(6) standard: resolving disputed facts for Defendants, applying heightened evidentiary burdens, and bypassing Fifth Circuit procedural safeguards for pro se amendments.

## II. ARGUMENT

### A. The Court Committed a Manifest Error of Law by Resolving Disputed Facts and Weighing Evidence at the Pleading Stage.

The Court erroneously concluded that Plaintiff was not "seized" and suffered no First Amendment injury (Doc. 36 at 14-15). Defendants attempt to defend these conclusions by arguing Plaintiff's departure was voluntary and his rights were not "chilled" because he later returned (Doc. 40 at 2-4). This ignores the core procedural defect: reaching these conclusions required impermissibly weighing evidence and resolving factual disputes against Plaintiff under Rule 12(b)(6).

**1. The "Voluntary" Departure (Fourth Amendment):** Defendants isolate Plaintiff's reference to Deputy Christ's "hold up" command (Doc. 40 at 2), ignoring the Fourth Amendment's "totality of the circumstances" requirement. *Michigan v. Chesternut*, 486 U.S. 567, 573 (1988). While the command initiated the seizure, the Deputy's physical weapon posturing (Doc. 13 at ¶ 26) and explicit arrest threat cemented its coercive nature. As Plaintiff explicitly pleaded, his departure was compelled because he was "facing threats of jail" (Doc. 13 at ¶ 29). By isolating two words, Defendants ignore this pleaded context. At the pleading stage, the Court must view all pleaded circumstances favorably to Plaintiff. Concluding a

citizen's retreat from an armed deputy's jail threat is "voluntary" rather than "coerced compliance" makes an impermissible factual finding reserved for a jury.

**2. Objective "Chilling Effect" Standard (First Amendment):** Defendants argue Plaintiff's rights were not chilled because he returned (Doc. 40 at 3-4). This misapplies First Amendment jurisprudence, which utilizes an objective, not subjective, test: whether the official's actions would chill a "person of ordinary firmness". *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002). Defendants' assertion that Plaintiff's return negates the violation unlawfully attempts to replace this objective standard with a subjective test of individual resilience.

**3. Misapplication of Crane:** Defendants misapply *Crane v. City of Arlington, Texas*, 50 F.4th 453 (5th Cir. 2022) (Doc. 40 at 4), to shield Christ's weapon posturing. Force threats are evaluated under the totality of circumstances. See *Graham v. Connor*, 490 U.S. 386, 396 (1989). While touching a weapon during a tense criminal arrest may not constitute excessive force, applying that standard to a peaceful, unthreatening citizen suspected of no crime, observing from a safe distance, and engaged in protected First Amendment activity is a manifest error of law.

**4. Conflation of Injury Standards:** Defendants retroactively justify the dismissal of Plaintiff's First Amendment claim by arguing he "suffered no injury" for failing to articulate "severe emotional distress" (Doc. 40 at 5). This is factually and legally frivolous. First, Plaintiff explicitly pleaded his emotional distress was "uniquely severe" under the damages section (Doc. 13 at 9). Second, Defendants improperly conflate state-law Intentional Infliction of Emotional Distress (IIED) elements with 42 U.S.C. § 1983 injury requirements. Deprivation of a constitutional right is a legally cognizable injury actionable for nominal and punitive damages, regardless of severe emotional harm. See *Uzuegbunam v. Preczewski*, 141

S. Ct. 792, 801-02 (2021). Defendants' attempt to retroactively justify the dismissal using state-law IIED injury standards is entirely without merit.

**5. Erroneous "Personal Involvement" Requirement:** The Court granted Sheriff Craft and Chief Turner qualified immunity, agreeing with Defendants that "a plaintiff must specify the personal involvement of each defendant" (Doc. 36 at 14). While personal involvement is required for direct liability, supervisory liability under § 1983 requires no physical participation in the underlying seizure; it is established through ratification or deliberate indifference. See *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011). By concluding these supervisors lacked "personal involvement" despite explicitly pleaded facts regarding their direct administrative ratification, the Court bypassed supervisory liability mechanisms and applied the wrong legal standard.

**6. Primary Tort vs. Mechanism of Liability:** The Court denied declaratory relief, agreeing Plaintiff lacked a right to an internal investigation (Doc. 36 at 20; Doc. 40 at 5-6). Plaintiff never alleged the failure to investigate was an independent constitutional tort. Rather, the underlying First and Fourth Amendment deprivations were committed by Deputy Christ. The Sheriff and Chief's subsequent actions—refusing video evidence and stating "We do not investigate our own" (Doc. 13 at 6-7)—establish the liability mechanism (ratification and deliberate indifference). Defendants' argument that these actions lack "deliberate indifference" (Doc. 40 at 5) is a factual defense improper at the pleading stage. Deliberate indifference requires disregarding a known consequence. *Connick v. Thompson*, 563 U.S. 51, 61 (2011). Chief Turner's explicit declaration that "We do not investigate our own," coupled with Sheriff Craft's personal refusal to review the objective video evidence, his failure to meaningfully investigate the complaint, and his subsequent public articulation of this policy (Doc. 32 at 10-11) constitutes textbook deliberate indifference and ratification by a final

policymaker. Dismissing this claim impermissibly weighed these pleaded facts in Defendants' favor.

**7. Equal Protection Claim:** Defendants argue Chief Turner's "different legal standard" admission cannot support an equal protection claim (Doc. 40 at 4). This reduces the claim to mere words; Plaintiff pleaded the disparate application of that two-tiered standard. Defendants also falsely assert Plaintiff failed to identify similarly situated comparators. Plaintiff explicitly identified "all other citizens lawfully present" and "the general public" as comparators (Doc. 32 at 23-24). Plaintiff detailed disparate treatment by multiple Defendants: Christ abandoned a prisoner to harass Plaintiff; and the supervisors investigated rumors for the general public while intentionally refusing Plaintiff's verified complaint (Doc. 13, Exhibit D; Doc. 32 at 23-24). Dismissing this claim when comparators, disparate actions, and discriminatory policies were explicitly pleaded constitutes manifest error.

**8. Misapplication of *Iqbal* and *Carswell*:** Defendants argue Plaintiff impermissibly invokes discovery to bypass *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), and *Carswell v. Camp*, 54 F.4th 307 (5th Cir. 2022) (Doc. 40 at 5-6). However, Plaintiff does not seek discovery to find facts; he already pleaded concrete facts the Court unlawfully ignored. Plaintiff did not plead "threadbare recitals" or legal conclusions. He pleaded specific facts: the 50+ yard distance, Christ's weapon posturing, the jail threat, the November 21 meeting, the refusal to review evidence, and the quote "We do not investigate our own" (Doc. 13 at ¶¶ 26, 29, 33, 36; id. at 7). *Iqbal* requires accepting these facts as true. While *Carswell* evaluates immunity without discovery, it requires drawing all reasonable inferences in Plaintiff's favor. By ignoring Plaintiff's facts, resolving inferences for Defendants, and demanding "proof" (Doc. 36 at 21), the Court imposed an unlawful evidentiary burden.

**B. The Court's Failure to Construe Plaintiff's Opposition as a Motion to Amend (The Brewster Cure)**

Defendants invoke *Brewster v. Dretke*, 587 F.3d 764 (5th Cir. 2009), falsely arguing Plaintiff lacked material facts for an amended complaint (Doc. 40 at 7). This ignores Fifth Circuit precedent requiring courts to construe a pro se plaintiff's opposition adding factual allegations as a Rule 15(a) motion to amend. See *Riley v. Sch. Bd. Union Par.*, 379 F. App'x 335, 341 (5th Cir. 2010); *Cash v. Jefferson Assocs., Inc.*, 978 F.2d 217, 218 (5th Cir. 1992).

Defendants accuse Plaintiff of misrepresenting *Erickson v. Pardus*, 551 U.S. 89 (2007), to demand an automatic right to amend (Doc. 40 at 7); rather, Plaintiff invokes its mandate that pro se pleadings be held to less stringent standards. Curing complaint vagueness in an opposition triggers a duty to construe those facts as an amendment. Dismissing with prejudice creates a rigid procedural trap. Defendants also falsely claim Plaintiff pleaded his "best case" (Doc. 40 at 7). To the contrary, Plaintiff explicitly requested leave to amend if deficiencies remained (Doc. 32 at 25). The *Brewster* exception is inapplicable.

Because Plaintiff's Opposition explicitly clarified actions, the Court was legally obligated to evaluate them as a proposed amendment. Finally, to satisfy *Brewster*, Plaintiff proffers the following facts already in the record for a Second Amended Complaint:

* **Fourth Amendment Seizure:** Plaintiff pleaded the distance ("50+ yards"), physical weapon gestures, and compelled departure via "facing threats of jail" (Doc. 13 at ¶ 29). Plaintiff will add precise, minute-by-minute mechanical details of the detention to definitively foreclose inferences of a "consensual" encounter.

\* **First Amendment Retaliation:** The Court erroneously concluded Plaintiff suffered no injury and was not chilled. Plaintiff will formally integrate the specific, severe psychological injuries already pleaded in the damages section (Doc. 13 at 9) directly into the First Amendment cause of action, explicitly satisfying the "actual injury" requirement for nominal and punitive damages under *Uzuegbunam.*

\* **Monell/Supervisory Liability:** The Court erroneously demanded "proof of more than a single instance" (Doc. 36 at 21). This ignores that Plaintiff already explicitly pleaded a 14-year pattern of impunity, detailing the 2012 and 2013 excessive force incidents and the "10-Day Deletion" spoliation custom (Doc. 13 at 3-4, 7-8). Furthermore, it ignores Plaintiff's alternative basis of "Administrative Ratification" via the Nov. 21 refusal of evidence and statement "We do not investigate our own" (Doc. 13 at 7)—which renders a prior pattern legally unnecessary under *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986). Plaintiff will formally codify this pattern and the "Official Articulation of Policy" from Jan. 6, 2026 (Doc. 32 at 11), into the amended complaint.

\* **Equal Protection Claim:** Plaintiff already identified comparators ("citizens lawfully present" and "the general public") and disparate actions by all Defendants (Doc. 32 at 23-24). Plaintiff will formally codify these into the amended complaint.

\* **Due Process (14th Amendment):** The Court erroneously dismissed this claim by applying the excessive force standard *Shillingford v. Holmes*, 634 F.2d 263 (5th Cir. 1981) (Doc. 36 at 7-8). Plaintiff already clarified (Doc. 32 at 22-23) that this claim does not rely on excessive force, but is rooted in Deputy Christ's deliberate fabrication of evidence under *Cole v. Carson*, 935 F.3d 444 (5th Cir. 2019), and administrative obstruction. Plaintiff will formally codify these distinctions to cure the Court's misapprehension.

\* **Failure to Train/Supervise:** The Court noted Plaintiff raised this theory but "did not plead this claim in his complaint" (Doc. 36 at 21). Plaintiff will formally codify the specific facts

regarding Sheriff Craft's deliberate indifference to training and supervision, as detailed in (Doc. 32 at 16-18), to cure this procedural omission.

* **State Law Claims:** Plaintiff already untangled the collective pleading, delineating individual torts against Christ and respondeat superior liability against Craft and Turner (Doc. 32 at 18-20). Plaintiff will formally codify these clarifications.

Dismissing the action with prejudice without affording a pro se litigant the opportunity to amend constitutes a reversible abuse of discretion.

## III. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court GRANT this Rule 59(e) Motion, VACATE the March 5, 2026 Judgment (Doc. 37) and Memorandum Ruling (Doc. 36), and reopen the case for discovery on the merits; or, in the alternative, grant Plaintiff leave to file a Second Amended Complaint.

Respectfully submitted,

_____

Hugh Brian Street, Plaintiff Pro Se

385 RC Stephens Rd, Leesville, LA 71446

Phone: 337-404-6465

Email: brian.street@southerntreeninjas.com

CERTIFICATE OF SERVICE

I hereby certify that on this 21 ST day of April, 2026, a true and correct copy of the foregoing PLAINTIFF'S REPLY TO DEFENDANTS' OPPOSITION TO RULE 59(e) MOTION was filed with the Clerk of Court and served upon counsel of record for the Defendants by depositing the same in the United States Mail, First-Class postage prepaid, and addressed as follows:

Jason P. Wixom

Rodrigue & Arcuri LLP

1615 Poydras Street, Suite 1250

New Orleans, LA 70112

Hugh Brian Street, Plaintiff Pro Se